FILED
United States Court of Appeals
Tenth Circuit

July 25, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BILLY A. MERRIFIELD,

      Plaintiff - Appellant/
Cross-Appellee,

    v.

BOARD OF COUNTY
COMMISSIONERS FOR THE
COUNTY OF SANTA FE; ROMAN
ABEYTA; BERNADETTE
SALAZAR; ANNABELLE ROMERO,

      Defendants - Appellees/
Cross-Appellants,

   and

GREG PARRISH,

      Defendant.

Nos. 10-2175, 10-2179

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:08-CV-00122-RLP-ACT)**

---

Michael Schwarz, Santa Fe, New Mexico, for Plaintiff - Appellant/Cross-Appellee.

Joel M. Young (Kevin M. Brown, with him on the briefs), Brown Law Firm, Albuquerque, New Mexico, for Defendants - Appellees/Cross-Appellants.

---

Before **HARTZ**, **McKAY**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

Contending that he was improperly terminated, Billy Merrifield, a former Youth Services Administrator of Santa Fe County's Youth Development Program at the County's youth correctional facility, sued the County Board of Commissioners and several County officials (collectively, Defendants) in federal court. He brought civil-rights claims under 42 U.S.C. § 1983 alleging that he had been denied procedural due process with respect to the County's pretermination hearing and that he had been fired in retaliation for retaining an attorney, in violation of his First Amendment right of association. His complaint also brought a state-law claim requesting judicial review of the County's administrative decision affirming the firing. The United States District Court for the District of New Mexico granted summary judgment for Defendants on the federal claims, but set aside the County's administrative decision and awarded Merrifield back pay. Merrifield appeals the grant of summary judgment to Defendants and the calculation of back pay, and the County cross-appeals the setting aside of the administrative decision.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the summary judgment on the constitutional claims. Merrifield failed to show (1) that his pretermination process was constitutionally inadequate and (2) that his association with an attorney involved a matter of public concern. As for the

district court's ruling on the state-law claim, we remand for dismissal without prejudice because it should be resolved in state court.

## I.       BACKGROUND

### A.       Merrifield's Termination and Administrative Appeal

In January 2007 Merrifield represented the County at a corrections conference in Florida.  On the afternoon of January 22 he sent a sexually graphic image to the personal cell phone of Robert Apodaca, one of his subordinates at the youth correctional facility.  Although the use of personal cell phones at the facility was prohibited, Apodaca received the image at work and displayed it to coworkers.  One became upset and complained.

Merrifield was placed on administrative leave with pay on January 25.  On February 22 defendant Annabelle Romero, the County's Director of Corrections, issued a letter recommending Merrifield's termination.  The letter stated that an internal investigation had revealed that Merrifield had sent pornographic images to a subordinate employee via cell phone and had "participated in a sexually inappropriate environment at the facility, and participated in other improper behavior among staff at the facility."  Aplt. App., Vol. 1 at 59.  It added that the investigation had also discovered "failings on [Merrifield's] part as a supervisor and improper conduct in [his] supervisory dealings with employees." *Id.*

By that time Merrifield had retained an attorney to represent him and had informed the County that all communications on the matter should go through his

attorney.  On February 23 the attorney sent a letter to defendant Bernadette Salazar, the County's Human Resources Director, requesting that the County make a number of documents available for inspection and copying.  The requested documents included "[e]ach and every policy, protocol or memorandum the County claims [Merrifield] violated," *id.* at 60, and documentation of the allegations in the Romero letter.

Salazar responded in a letter dated March 5.  The letter included copies of County policies on cell-phone use, sexual harassment, and the responsibilities of managers and supervisors, and it offered Merrifield's attorney the opportunity to review Merrifield's personnel file.  But it denied Merrifield's request for further information and documents.  It explained that both the meeting at which Merrifield had received Romero's letter and his forthcoming predisciplinary hearing afforded him the opportunity "to explore the basis for the recommendation of termination." *Id.* at 63.  The letter also noted that if Merrifield chose to appeal any disciplinary action taken against him, he would be entitled to a full evidentiary hearing and that "[m]uch of [his] request is geared towards preparation for such a hearing and should be sought through appropriate procedures during the appeal process." *Id.* at 63–64.

Merrifield attended the March 8 pretermination hearing with his lawyer.  Afterwards Salazar agreed with Romero's recommendation to terminate Merrifield's employment.  Merrifield, through his attorney, appealed the

recommendation to defendant Ramon Abeyta, the County Manager. Abeyta rejected the appeal and terminated Merrifield in a March 21 letter. Abeyta described Merrifield's admitted sending of the cell-phone image as action displaying "poor judgment," as "intolerable behavior," and as "an example of the unacceptable behavior [Merrifield had] displayed in [his] capacity as the Administrator." *Id.*, Vol. 2 at 367. He further found that Merrifield had "participated in sending and receiving inappropriate e-mail utilizing County equipment while on County time," *id.*, and that he had used his County cell phone "inappropriately" by making calls that were not work-related, *id.* at 368.

Merrifield then invoked his right under County personnel rules to appeal the termination to a hearing officer. The hearing officer conducted a nine-day posttermination hearing in April, May, and June. On July 19, 2007, the hearing officer issued a 19-page decision affirming Merrifield's termination. She decided that she was to review Abeyta's decision under an arbitrary-and-capricious standard, rejecting Merrifield's argument that the proper standard of review was de novo. She said that discipline was justified by Merrifield's transmission and display of sexually explicit images via his cellphone and his work computer and by his contributing to an atmosphere of misuse of County computer equipment at the facility. Although she held that the County had not acted arbitrarily or capriciously in deciding that the proper discipline was termination, she said that had she "been imposing discipline ab initio[, she] . . . would have demoted

[Merrifield] to a non-supervisory position and . . . suspended him without pay for five weeks," *id.*, Vol. 1 at 55 n.2. She also ruled that Merrifield had been afforded due process, stating that "[a]s to each of the matters which I have found would support discipline, [Merrifield] was given sufficient notice that these matters were the basis for termination," in part because "[h]e was given an opportunity to respond to these matters at the pre-termination hearing." *Id.* at 55.

## B. Federal District Court Proceedings

On February 4, 2008, Merrifield filed his complaint in federal district court. His later amended complaint named as defendants the Board of County Commissioners, Abeyta, Salazar, Romero, and Greg Parrish, Merrifield's supervisor. The individual County employees were sued in both their official and individual capacities. The complaint contended (1) that the County, Salazar, and Romero violated Merrifield's rights under the Due Process Clause of the Fourteenth Amendment by failing to provide adequate notice of the charges and the evidence against him before his pretermination hearing, and (2) that the County, Abeyta, Romero, and Parrish violated his First Amendment right to associate with counsel by retaliating against him for hiring an attorney to represent him in the disciplinary process. The complaint also included a supplemental state-law claim seeking review of the hearing officer's decision.

The district court ultimately granted summary judgment against Merrifield on the federal claims. It held that he had been provided due process and, after

striking as inadmissible some sworn statements by former County employees, it held that Merrifield had failed to present evidence that the County had fired him because of his retention of or consultation with counsel. On the other hand, the court agreed with Merrifield that the hearing officer should have reviewed the County termination decision de novo, and it adopted the hearing officer's alternative penalty of demotion to a nonsupervisory position and a five-week suspension. The court then conducted further proceedings to assess damages and awarded Merrifield $30,866.50 in back pay. Both Merrifield and the County appealed.

## II.  DISCUSSION

Merrifield raises the following five issues on appeal:  (1) that he was deprived of due process because he was not provided adequate notice of the charges and evidence against him before his pretermination hearing; (2) that the district court abused its discretion by striking portions of affidavits by former County employees relating to his retaliation claim; (3) that the district court erred in holding that he had not presented sufficient evidence that he was terminated in retaliation for hiring an attorney; (4) that the First Amendment protected him against retaliation by the County for his associating with an attorney regardless of whether that association involved a matter of public concern, and that, in any event, his association did involve a matter of public concern; and (5) that the reduction in pay used in the district court's damage calculation was so significant

-7-

as to constitute a constructive discharge. The County cross-appeals, challenging the district court's holding that the hearing officer should have reviewed Merrifield's termination de novo.

To resolve this appeal we need consider only issues (1) and (4). We first address Merrifield's federal claims. After holding that summary judgment was properly granted on those claims, we hold that the state-law claims should be dismissed without prejudice.

### A.    Federal Claims

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *See Jensen v. Solvay Chems., Inc.*, 625 F.3d 641, 650 (10th Cir. 2010) (internal quotation marks omitted). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009) (internal quotation marks omitted). "[W]e can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir. 2009) (internal quotation marks omitted).

### 1.    Procedural Due Process

Merrifield argues that the County violated his due-process rights by failing to provide him pretermination notice of both the charges and the evidence against him.  "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry:  (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (internal quotation marks omitted).  Because it is undisputed that Merrifield possessed a protected interest in his employment, we address only the second question.

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted).  Because "the root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest," there must be "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (internal quotation marks omitted).  "[S]uch a hearing requires:  (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *Riggins*, 572

-9-

F.3d at 1108 (brackets and internal quotation marks omitted).  But "[a] full evidentiary hearing is not required prior to an adverse employment action"; it suffices that the employee is "given notice and an opportunity to respond." *Id.* (internal quotation marks omitted).

Merrifield's inadequate-notice argument in his opening appellate brief refers only to the shortcomings of the Romero letter, which recommended his termination to County Personnel Director Salazar.  *See, e.g.*, Aplt. Br. at 11 ("The question is whether Romero's notice of [sic] was constitutionally sufficient under [*Loudermill*]." (citation omitted)).  But even if that letter provided little notice, he has not established a due-process violation.  The necessary notice may come at the hearing itself.  As we have stated:

> Nothing in *Loudermill* suggests, nor do we hold, that a public employee is entitled to some type of 'pre-notification notice' of the charges against her or him.  Likewise, *Loudermill* does not imply that, in conducting the pretermination hearing, there must be a delay between the 'notice' and the 'opportunity to respond' accorded to the public employee.

 *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989).  Yet Merrifield's opening brief makes no reference to what was disclosed to him at the pretermination hearing, implying that he is raising no challenge to the adequacy of the disclosures at that proceeding.  Absent such a challenge, Merrifield's due-process claim fails.

At oral argument, however, counsel for Merrifield argued that the disclosures at the pretermination hearing were inadequate because the hearing officer's posttermination decision was based on evidence not disclosed to him at the pretermination hearing. We decline to address this argument—for two independently sufficient reasons. First, we have carefully reviewed Merrifield's opening brief and do not find the argument that he later raised at oral argument. *See Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider the merits of a claim that had not been adequately presented in the opening brief, even though appellant asserted the claim at oral argument). Second, on the record before us we could not properly review the issue even if we wished to. The record on appeal does not include a transcript of the pretermination hearing, although such a transcript appears to have been in the administrative record. *See* Aplt. App., Vol. 2 at 271 (citing to the transcript in the administrative record). "Where the record is insufficient to permit review we must affirm." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1150 n.11 (10th Cir. 2007) (internal quotation marks omitted).

Accordingly, we affirm the district court's grant of summary judgment to the County on Merrifield's due-process claim.

### 2. Right to Associate with Counsel

Merrifield claims that Defendants imposed the harsh sanction of termination because it disapproved of his retaining a lawyer to represent him in the disciplinary matter. This retaliation, he contends, violated his First Amendment freedom of association. We are not persuaded.

The First Amendment (which applies to the states through the Fourteenth Amendment, *see Deutsch v. Jordan*, 618 F.3d 1093, 1096 (10th Cir. 2010)) generally prohibits the government from imposing burdens on "freedom of speech, [freedom] of the press, . . . the right of the people peaceably to assemble, and [the right of the people] to petition the Government for a redress of grievances." U.S. Const. amend. I. When, however, the relationship of the government to the person is that of an employer, those First Amendment rights are limited. Speech, for example, can be insubordinate, disruptive, or demoralizing; and government employers are not required to let such misconduct pass. As the Supreme Court wrote in *Garcetti v. Ceballos*:

> When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.

547 U.S. 410, 418 (2006) (citation omitted).

To accommodate the government's interest as an employer, the Supreme Court has developed a five-element test to determine the validity of a claim that the government has improperly retaliated against an employee based on the

-12-

employee's speech.  *See Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2 009).[1]  The component of that test that requires our attention on this appeal is the requirement that the claim be based on employee speech that is "on a matter of public concern."  *Id.*  "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004).  The public-concern requirement serves to limit the protection of speech by an employee to speech that the employee makes in his capacity as a citizen, rather than simply as an employee.  *See Garcetti*, 547 U.S. at 418 (employee is protected against retaliation only if "the employee spoke as a citizen on a matter of public concern").

Very recently the Supreme Court decided that the public-concern requirement should likewise apply when a government employee complains of retaliation based on his exercise of the First Amendment right to petition the

---

[1]Those five-elements are

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009); *see Lauck v. Campbell Cnty.*, 627 F.3d 805, 814 (10th Cir. 2010).

government for redress of grievances. *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2495 (2011). Guarnieri alleged that the Borough had retaliated against him for filing two petitions: his union grievance challenging his termination by the Borough and a later lawsuit claiming that he had been retaliated against for filing the grievance. *See id.* at 2492. Barring Guarnieri's claim because the petitions did not raise a matter of public concern, the Court explained:

> The substantial government interests that justify a cautious and restrained approach to the protection of speech by public employees are just as relevant when public employees proceed under the Petition Clause. Petitions, no less than speech, can interfere with the efficient and effective operation of government. A petition may seek to achieve results that contravene governmental policies or impair the proper performance of governmental functions.

*Id.* at 2495 (internal quotation marks omitted). Indeed, it said that "[w]hen a petition takes the form of a lawsuit against the government employer, it may be particularly disruptive," *id.* at 2496, and proceeded to expand at length on how "[u]nrestrained application of the Petition Clause in the context of government employment would subject a wide range of government operations to invasive judicial superintendence," *id.*

The issue joined by the parties in this appeal is whether the public-concern requirement also applies to a claim by a government employee that he was retaliated against because of his exercise of the freedom of association. To resolve that issue, we must begin with an understanding of what is encompassed

-14-

by freedom of association. The Supreme Court has pointed out that its "decisions have referred to constitutionally protected 'freedom of association' in two distinct senses." *Roberts v. United States Jaycees*, 468 U.S. 609, 617 (1984). The two senses are sometimes labeled as the "intrinsic" sense, which relates to certain intimate human interactions, and the "instrumental" sense, which relates to associations necessary to engage in the enumerated First Amendment rights. *Id.* at 618. The first type of association is protected as a component of substantive due process. The second is protected as a means of effectuating First Amendment rights. The Supreme Court has explained the two senses as follows:

> In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. *The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.*

*Id.* at 617–18 (emphasis added).

On this appeal we need not determine whether the public-concern requirement applies when a government employee claims retaliation based on the employee's exercise of the intrinsic right of freedom of association. This court has expressed doubt whether that requirement should apply in that context, as

-15-

have others.  *See Schalk v. Gallemore*, 906 F.2d 491, 498 n.6 (10th Cir. 1990);

*Flanagan v. Munger*, 890 F.2d 1557, 1564 n.7 (10th Cir. 1989); *Montgomery v.*

*Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005); *Akers v. McGinnis*, 352 F.3d 1030,

1044–45 (6th Cir. 2003) (Clay, J., concurring in part and dissenting in part); *see*

*generally* Mark Strauss, Note, *Public Employees' Freedom of Association:*

*Should* Connick v. Myers*' Speech-Based Public Concern Rule Apply?*, 61

Fordham L. Rev. 473, 476–89 (1993).  We also need not determine whether the

public-concern requirement applies when the alleged protected association is for

the free exercise of religion.  We consider only the instrumental right of freedom

of association for the purpose of engaging in speech, assembly, or petitioning for

redress of grievances.

Association with an attorney can be protected as such a right.  This was

recognized by the Supreme Court first in *NAACP v. Button*, 371 U.S. 415 (1963),

and then in *Brotherhood of Railroad Trainmen v. Virginia ex. rel. Virginia State*

*Bar*, 377 U.S. 1 (1964), and *United Mine Workers v. Illinois State Bar*

*Association*, 389 U.S. 217 (1967).  As the Court explained in the last of these

opinions:

> We start with the premise that the rights to assemble
> peaceably and to petition for a redress of grievances are among the
> most precious of the liberties safeguarded by the Bill of Rights.
> These rights, moreover, are intimately connected both in origin and
> in purpose, with the other First Amendment rights of free speech
> and free press.  All these, though not identical, are inseparable.  The
> First Amendment would, however, be a hollow promise if it left

> government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil.
>
> The foregoing were the principles we invoked when we dealt in the *Button* and *Trainmen* cases with the right of an association to provide legal services for its members.

*United Mine Workers*, 389 U.S. at 222 (citations and internal quotations marks omitted). We will assume, without deciding, that Merrifield's retention of an attorney for his disciplinary proceedings amounted to associating with an attorney to exercise his speech and petition rights in the employment dispute. (If his retention of an attorney could not be so characterized, it would receive no First Amendment protection whatsoever.)

In our view, the public-concern requirement applies to a claim that a government employer retaliated against an employee for exercising the instrumental right of freedom of association for the purpose of engaging in speech, assembly, or petitioning for redress of grievances. To begin with, the public-concern test in speech-retaliation cases has its origin in freedom-of-association cases. The public-concern requirement was first set forth in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), the leading decision addressing freedom of speech in the employee-retaliation context. As later recounted in

*Connick v. Myers*, 461 U.S. 138 (1983), the Court in *Pickering* found its justification for the requirement in Supreme Court doctrine regarding employee freedom of association:

> *In . . . the precedents in which Pickering is rooted, the invalidated statutes and actions sought to suppress the rights of public employees to participate in public affairs. The issue was whether government employees could be prevented or "chilled" by the fear of discharge from joining political parties and other associations that certain public officials might find "subversive."* The explanation for the Constitution's special concern with threats to the right of citizens to participate in political affairs is no mystery. The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the highest rung of the heirarchy of First Amendment values, and is entitled to special protection.

> [*Pickering*] followed from this understanding of the First Amendment.

*Id.* at 144–45 (brackets, citations, and internal quotation marks omitted) (emphasis added); *see Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985) (*"Pickering* and *Connick . . .* are based upon freedom of association cases.")  It would be ironic, if not unprincipled, if the public-concern requirement derived from freedom-of-association cases did not likewise apply to retaliation for such association.

Moreover, to give special status to retaliation claims based on nonreligious instrumental freedom of association—by eschewing the public-concern

-18-

requirement in those cases—would violate the Supreme Court's teaching that the "political" First Amendment rights should be treated equally, at least in the government-employment context. In *McDonald v. Smith*, 472 U.S. 479 (1985), the Court rejected the argument that exercise of the right to petition for redress of grievances should be absolutely immune from suit for defamation. It held that the test for liability should be the same "malice" test applied with respect to freedom of speech and freedom of the press. *Id.* at 485. The Court wrote:

> To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.

*Id.* (citations omitted). Just recently, in *Guarnieri*, the Court warned against reading *McDonald* to presume that "there is always an essential equivalence" among First Amendment rights; but it held that "claims of retaliation by public employees do not call for [a] divergence" in the treatment of petition and speech claims. *Guarnieri*, 131 S. Ct. at 2495. In particular, it expressed concern about the practical consequences of using different rules for evaluating retaliation claims based on different clauses of the First Amendment. It explained: "Articulation of a separate test for the Petition Clause would aggravate potential

-19-

harm to the government's interests by compounding the costs of compliance with the Constitution." *Id.* at 2498.

We think it highly doubtful that the Supreme Court would not impose the public-concern requirement on claims that the government retaliated against an employee for associating with an attorney to speak or petition the government when it does impose the requirement on claims that the government retaliated against an employee for speaking or petitioning the government. The majority of our fellow circuits that have addressed the issue have also concluded that the public-concern requirement applies to claims that a government employer retaliated for exercise of the instrumental right of association. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004); *Edwards v. City of Goldsboro*, 178 F.3d 231, 249–50 (4th Cir. 1999); *Griffin v. Thomas*, 929 F.2d 1210, 1213–14 (7th Cir. 1991)*; Boals*, 775 F.2d at 692; *cf. Hudson v. Craven*, 403 F.3d 691, 697–98 (9th Cir. 2005) (involving a hybrid speech and association claim).

We recognize that two circuits have ruled to the contrary. But we are not persuaded by those opinions. The Eleventh Circuit's opinion in *Hatcher v. Board of Public Education*, 809 F.2d 1546, 1558 (1987), gave the issue short shrift, only one paragraph. The court did not consider the Sixth Circuit's contrary holding in *Boals*, and did not grapple with the arguments that we find convincing. In particular, *Hatcher* did not address the Supreme Court's opinion in *McDonald* or the roots of the public-concern requirement of *Pickering* and *Connick* in freedom-

of-association decisions. It justified its conclusion by saying only that *Connick* did not retreat from *NAACP v. Alabama*, 357 U.S. 449 (1958) (reversing order requiring association to disclose its members' identities), a freedom-of-association case not involving government employment. *See Hatcher*, 809 F.2d at 1558.

Likewise, the Fifth Circuit's leading opinion, *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991), did not address the contrary authority from the Sixth and Seventh Circuits and did not address the Supreme Court opinions that we find convincing. To support its rejection of the public-concern requirement, the court relied on Supreme Court decisions that "found dismissals of public employees based solely on patronage or political affiliation to violate the First Amendment." *Coughlin*, 946 F.2d at 1158. But because we think that the public-concern requirement would be satisfied in those cases, we are not persuaded by *Coughlin* that they stand for the proposition that there is no public-concern requirement in freedom-of-association retaliation cases. (We also note with interest that although *Coughlin* stated that the employee in that case was "not subject to the threshold public concern requirement," *id.*, the alleged association for which he was retaliated against was affiliation with a political campaign, an association that we would consider to be an association on a matter of public concern. *See Connick*, 461 U.S. at 149 (questionnaire asking fellow public employees whether they "'ever feel pressured to work in political campaigns'" touched on a matter of

public concern).)  True, *Coughlin* has generally been followed in the Fifth Circuit's later freedom-of-association retaliation cases; but those later panels have been bound by circuit precedent.

We also reject Merrifield's contention that Tenth Circuit precedent requires rejection of the public-concern requirement in this context.  He relies on *Butcher v. City of McAlester*, 956 F.2d 973 (10th Cir. 1992); *Morfin v. Albuquerque Public Schools*, 906 F.2d 1434 (10th Cir. 1990); and *Owens v. Rush*, 654 F.2d 1370 (10th Cir. 1981).  But none of those cases discussed whether the public-concern requirement would apply to association-based retaliation claims.  It is elementary that an opinion is not binding precedent on an issue it did not address. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").  For some time we have recognized that the issue we are deciding today has been open in this circuit.  In an opinion postdating the ones cited by Merrifield, *Shrum v. City of Coweta*, 449 F.3d 1132, 1138 (10th Cir. 2006), for example, we said that we had not "determined, as a general matter, whether *Pickering*'s public concern requirement applies to freedom of association claims," although we noted that in the specific context of public-employee labor unions, we have "rejected the requirement that a worker demonstrate that his association with the union be a matter of public concern." *Id.*

Finally, we turn to Merrifield's alternative argument that he has satisfied the public-concern requirement. Merrifield's appellate briefs do not attempt to explain how his association with counsel was to enable him to speak or petition on "a subject of legitimate news interest." *City of San Diego*, 543 U.S. at 83–84. His argument consists of one sentence in his reply brief. He asserts that the attorney-client relationship categorically qualifies as a matter of public concern "because it is of a concern to the community, our social way of life, at the core of our system of justice." Aplt. Reply Br. at 15.

Merrifield's assertion amounts to saying that *all* association with counsel—in contrast to speech and petitions to the government—is on a matter of public concern. But association with counsel, which is protected only as a means to effectuate rights to speak and petition, cannot be entitled to more protection through the First Amendment than the enumerated First Amendment rights themselves. And when we consider the specific functions of Merrifield's attorney in this case, it is apparent that his role was not to pursue matters of public concern. As the Supreme Court said in rejecting a right-to-petition retaliation claim: "A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Guarnieri*, 131 S. Ct. at 2501. Addressing grievance proceedings like the one before us, it wrote:

> A petition that involves nothing more than a complaint about a change in the employee's own duties does not relate to a matter of public concern and accordingly may give rise to discipline without imposing any special burden of justification on the government employer. The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. *It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.*

*Id.* (citation and internal quotation marks omitted) (emphasis added). Merrifield has provided no reason to treat his association with his attorney as concerning anything more than an "everyday employment dispute[]." *Id.*

Because Merrifield has failed to establish that his association with counsel involved a matter of public concern, his retaliation claim fails as a matter of law. Hence, we need not address his arguments that the district court erred in striking portions of his former coworkers' affidavits or that the court erred in finding that the defendants were not motivated to fire Merrifield because he had retained an attorney. We affirm the summary judgment in favor of Defendants on the First Amendment claims.

## B. State Law Claims

Both Merrifield and the County appeal the district court's decisions with regard to Merrifield's state-law claim. Merrifield contends that the court's calculation of back pay constituted a constructive discharge. And the County contends that the court erred in holding that the hearing officer should have

reviewed the County's termination decision de novo. We resolve neither contention, leaving the matter to the proper forum, the New Mexico courts.

Merrifield brought his due-process and retaliation claims under 42 U.S.C. § 1983. The district court had federal-question jurisdiction over these claims under 28 U.S.C. § 1331. And it had supplemental jurisdiction over the state-law claim because it was "part of the same case or controversy." *Id.* § 1367(a).[2] Under § 1367(c), however, a federal court has discretion to decline jurisdiction over a state-law claim in the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

---

[2]Section 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

The Supreme Court has instructed that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Two of the circumstances listed in § 1367(c) require declination of jurisdiction in this case. First, the principal issue in the state-law claim—the standard of review that the hearing officer should have applied—is "a novel . . . issue of State law." 28 U.S.C. § 1367(c)(1). The parties inform us that there is no controlling precedent on the issue. And both Merrifield and the County sought early in the district-court proceedings to have the matter resolved in state court: the County moved to have the state-law claim dismissed without prejudice, and Merrifield sought certification of this issue to the New Mexico Supreme Court. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997) ("[A]n authoritative state court ruling on the [novel state-law] claim should be permitted, instead of a guess or uncertain prediction by a federal court").

Second, § 1367(c)(3) applies because we have affirmed the dismissal of the claims over which the district court had original jurisdiction; indeed these claims had been dismissed before the district court finally decided the state-law claim. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (this circuit has "generally held that if federal claims are dismissed before trial, leaving only

-26-

issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice" (brackets and internal quotation marks omitted)).

We recognize that dismissal will require the parties to rebrief the state-law issues in state court, a duplication of prior efforts. But if it were necessary for this court to retain the state-law claim, we might well find it advisable to certify one or more questions to the New Mexico Supreme Court, which would also require further briefing by the parties. In any event, the interest in comity—leaving to the states to decide novel questions of state-law—clearly predominates here. We therefore reverse the district-court judgment on the state-law claim and remand with instructions to dismiss the claim without prejudice.

## III. CONCLUSION

We AFFIRM the district court's judgment on Merrifield's due-process and First Amendment claims. We REVERSE the district court's judgment on the remaining claim seeking review of the hearing officer's decision, and REMAND to the district court with instructions to dismiss it without prejudice.