**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BENJAMIN CARTER,

     Plaintiff - Appellee,

v.

DAVID BEEBE, in his individual and
official capacities,

     Defendant - Appellant,

and

MOUNTAIN VIEW FIRE PROTECTION
DISTRICT,

     Defendant.

No. 25-1424
(D.C. No. 1:23-CV-02348-PAB-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **MATHESON**, and **ROSSMAN**, Circuit Judges.
_____

Fire Chief David Beebe fired Benjamin Carter from his position as a firefighter

with the Mountain View Fire Protection District ("MVFPD"). In doing so, he followed

the disciplinary process in the collective bargaining agreement ("CBA") between

_____

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Carter's union and the MVFPD. Mr. Carter sued Chief Beebe under 42 U.S.C. § 1983 for violating his Fourteenth Amendment right to procedural due process. The district court denied Chief Beebe qualified immunity and granted Mr. Carter summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

## I.    BACKGROUND

### A.  *Factual History*[1]

Mr. Carter began working for MVFPD in 2009. *Carter v. Mountain View Fire Prot. Dist.*, No. 23-CV-02348, 2025 WL 2780916, at *1 (D. Colo. Sept. 30, 2025). Since then, he has been a member of Mountain View Professional Firefighters, Local 3214, International Association of Firefighters (the "Union"). *Id.* He has served on the Union's executive board since 2012 and was elected Union President on January 1, 2023. *Id.* "Mr. Carter was the Union's lead negotiator" and a signatory "on the CBA that governed" his termination. *Id*. at *5.

The CBA provides that Union members may be discharged only for "just cause." *Id.* It outlines the process MVFPD officials must follow to terminate an employee. *Id.* It "does not include a right to a post-termination hearing" and says that the Fire Chief is the final decisionmaker on all disciplinary matters. *Id.*

In January 2023, Mr. Carter was upset to learn that a new MVFPD recruit asked not to have an American flag on his gear. *Id.* at *1. He expressed frustration to higher-ranking MVFPD employees and Human Resources. *Id.* at *1-2. One Human Resources

---

[1] The following is drawn from the district court's findings of undisputed facts.

employee described Mr. Carter's comments as "unnecessarily confrontational, dismissive, and belittling." *Id.* at *2. After learning that the recruit's request was for a religious accommodation, Mr. Carter shared that information with 14 other MVFPD employees and made "negative and potentially harassing" comments. *Id.*

In February 2023, Chief Beebe placed Mr. Carter on administrative leave and initiated an investigation into his conduct. *Id.* at *2-3. After following the CBA's disciplinary procedures, Chief Beebe fired Mr. Carter. *See id.* at *3-4. He did not give Mr. Carter a post-termination hearing. *Id.* at *4.

## B. *Procedural History*

Mr. Carter sued Chief Beebe under § 1983, alleging the termination violated his Fourteenth Amendment right to procedural due process. *Id.* at *6.[2] Both moved for summary judgment, with Chief Beebe asserting qualified immunity. *Id.* at *5. The district court denied Chief Beebe qualified immunity, denied his motion, and granted Mr. Carter's motion. *Id.* at *12.

Relying on the CBA's "just cause" requirement for termination, the district court determined that "Mr. Carter had a protected property interest in his continued employment and was entitled to the protections of . . . procedural due process." *Id.* at *7.

---

[2] Mr. Carter also alleged violations of his (1) First and Fourteenth Amendment right to free speech and assembly, (2) First and Fourteenth Amendment right to free association, and (3) the Colorado Firefighter Safety Act. He further claimed municipal liability against the MVFPD. The district court granted summary judgment to Chief Beebe on these claims and dismissed MVFPD. *Carter*, 2025 WL 2780916, at *23. These matters are not at issue in this appeal.

The court next concluded "that the totality of the process that Chief Beebe afforded to Mr. Carter in connection with his termination violated his constitutional rights" because "Chief Beebe provided Mr. Carter with no meaningful post-termination process." *Id.* at *9-10.

The court further determined the law was clearly established that Mr. Carter had a "just cause" due process property interest and that he was entitled to a post-termination hearing. *Id.* at *12. It therefore concluded that "Chief Beebe [wa]s not entitled to qualified immunity" and "grant[ed] summary judgment in favor of Mr. Carter." *Id.*

## II.  DISCUSSION

Chief Beebe argues the district court erred in determining that he violated clearly established law by failing to afford Mr. Carter a post-termination hearing. *See* Aplt. Br. at 24-28. We agree. Mr. Carter has not shown that Chief Beebe violated clearly established law when he fired Mr. Carter according to the disciplinary procedures provided in the CBA.[3]

### A.  *Standard of Review*

On interlocutory review of a denial of qualified immunity, we "consider de novo the purely legal questions of (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation and (2) whether that law was

---

[3] Chief Beebe argues that Mr. Carter waived his right to any additional process, including a post-termination hearing, by negotiating and signing the CBA. Aplt. Br. at 18-24. Rather than address this argument, we instead focus on whether Mr. Carter had a clearly established right to procedural protections beyond those in the CBA.

clearly established at the time of the alleged violation." *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (quotations omitted).

## B. *Legal Background*

### 1. Qualified Immunity

Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Individual defendants may assert qualified immunity, which "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. Henderson*, 101 F.4th 1185, 1192-93 (10th Cir. 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

"[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013)). We may "consider the two parts of this test in the sequence we deem best 'in light of the circumstances in the particular case at hand.'" *Id.* at 412 (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). "The court must grant the defendant qualified immunity if the plaintiff fails to prove either prong." *Flores*, 101 F.4th at 1193 (quoting *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022)).

5

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quotations omitted). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017). The relevant "precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Id.* (quotations omitted).

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). A prior decision must sufficiently address the prohibited conduct so "that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see T.D. v. Patton*, 868 F.3d 1209, 1236 (10th Cir. 2017).

## 2.  Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (quotations omitted). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (quotations omitted). We focus on

the second element here because no one disputes that Mr. Carter had a protected property interest in his continued employment. *See* Aplt. Br. at 15-18.

"Because the root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest," a public employer must provide "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Merrifield*, 654 F.3d at 1078 (quotations omitted). Although the district court discussed pre-termination and post-termination procedure afforded in Mr. Carter's termination, the parties focus their appellate arguments on whether Mr. Carter was entitled to a post-termination hearing.[4]

### C. *Analysis*

Mr. Carter has not met his burden to demonstrate that Chief Beebe violated clearly established law when he fired Mr. Carter after following the procedures in the CBA.

Mr. Carter relies primarily on *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), for clearly established law. Aplee. Br. at 13-16. In that case, a public school board employee had been summarily dismissed for alleged dishonesty on his employment application. *Id.* at 535. Because the applicable state statute said he could be

---

[4] We have "indicated in dicta that a full post-termination hearing is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses," and "stated elsewhere that while not necessary in every case, procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000) (quotations omitted). Neither party disputes that Mr. Carter was not provided with a "full post-termination hearing."

dismissed only for cause, the Court said he had a due process property interest. *Id.* at 538-39. But the statute that created the property right also afforded limited pre- and post-termination procedures. *Id.* at 539. The Court said a state legislature could not confer a due process property interest and then limit the procedures required for its deprivation, rejecting "the bitter with the sweet approach" to procedural due process. *Id.* at 540-41 (quotations omitted). The Court said, "While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)).

Mr. Carter argues that under *Loudermill*, the CBA may not confer "just cause" termination protection and also deny a post-termination due process hearing. Aplee. Br. at 13-16. This argument may have merit on the first step of qualified immunity analysis—constitutional violation, but not the second—clearly established law.

Mr. Carter has not cited a Supreme Court, Tenth Circuit, or other circuit case that has applied *Loudermill* to a CBA. He instead relies on general statements of procedural due process law rather than cases that establish "the violative nature of *particular* conduct" at issue here. *Mullenix*, 577 U.S. at 12. A contract between the union and the public employer is not the same as a state statute. Mr. Carter therefore has not shown that "every reasonable official would have understood" that the CBA, a contractually bargained-for disciplinary procedure, violated the Constitution. *Redmond v. Crowther*,

8

882 F.3d 927, 935 (10th Cir. 2018) (quotations omitted).[5]  And because he has not met his burden of establishing that Chief Beebe violated clearly established constitutional law, Chief Beebe is entitled to qualified immunity on Mr. Carter's procedural due process claim.

### III.  CONCLUSION

We reverse the district court's judgment and remand for further proceedings.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[5] *See also Radwan v. Manuel*, 55 F.4th 101, 128 (2d Cir. 2022) ("Due process claims are a particularly fertile ground for qualified immunity, given that state officials can be liable only for violations of rights that have been established beyond debate and with particularity by existing constitutional precedents." (quotations omitted)).