**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

SHERWIN V. KOYLE,

      Plaintiff - Appellant,

v.

SAND CANYON CORPORATION;
WELLS FARGO BANK NATIONAL
ASSOCIATION,

      Defendants - Appellees.

No. 16-4035
(D.C. No. 2:15-CV-00239-DBP)
(D. Utah)

ORDER AND JUDGMENT[*]

Before **KELLY, BRISCOE** and **LUCERO**, Circuit Judges.

      Sherwin Koyle, the plaintiff in this diversity action, appeals the district court's grant of summary judgment in favor of defendants Sand Canyon Corporation and Wells Fargo Bank National Association on Koyle's claims under Utah state law challenging defendants' attempts to foreclose on a deed of trust that secured Koyle's obligations under a corresponding note. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

---

      [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

*Koyle's execution of the Note*

On February 7, 2003, Koyle executed an adjustable rate note (Note) in the amount of $139,400, and a Deed of Trust encumbering a parcel of real estate located at 389 E. 1090 N. in the Mountain Green Subdivision of Orem, Utah (the Property). The TLP Funding Corporation (TLP) was the beneficiary named in the Deed of Trust and Stewart Title Company (Stewart Title) was the trustee. On February 21, 2003, the Deed of Trust was recorded in the official records of the Utah County Recorder.

*Assignment of the Note to Wells Fargo*

On or about May 1, 2003, TLP assigned its interest in the Deed of Trust to Option One Mortgage,[1] which then immediately assigned the same interest to Wells Fargo Bank Minnesota, National Association (Wells Fargo).[2] These May 1, 2003 transactions were registered by Stewart Title with the Utah County Recorder on December 12, 2003.[3]

*Koyle's default on the Note*

Koyle failed to make timely payments on the Note. As a result of Koyle's default,

---

[1] Option One Mortgage is now known as Sand Canyon Corporation (Sand Canyon).

[2] According to the record, on February 20, 2004, Wells Fargo Bank Minnesota, National Association, merged into and began operating as part of Wells Fargo Bank, National Association. Dist. Ct. Docket No. 2, Ex. 1 at 3. For purposes of this Order and Judgment, both entities will be referred to as Wells Fargo.

[3] At the time Stewart Title filed these documents with the Utah County Recorder, it was no longer trustee.

Wells Fargo caused two documents to be recorded with the Utah County Recorder on October 16, 2003. First, Wells Fargo caused to be filed with the Utah County Recorder a Substitution of Trustee naming Scott Lundberg as successor trustee to replace Stewart Title.[4] Dist. Ct. Docket No. 2, Ex. 1 at 3. Second, Scott Lundberg, as successor trustee, filed with the Utah County Recorder a Notice of Default and Election to Sell (Notice of Default) against the Property. Id. The Notice of Default "declare[d] all sums . . . immediately due and payable," but also noted that the "default [wa]s subject to reinstatement in accordance with Utah law." Dist. Ct. Docket No. 15, Ex. 4 at 1.

*Koyle's Chapter 13 bankruptcy proceedings*

On March 24, 2004, Koyle filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Utah. Koyle's filing resulted in an automatic stay pursuant to 11 U.S.C. § 362 that prohibited Wells Fargo from taking further action in connection with the Notice of Default.

On October 19, 2004, the bankruptcy court overseeing Koyle's Chapter 13 bankruptcy proceeding signed an order and payment plan that was agreed to and signed by the parties. Under the terms of the payment plan, the parties agreed that the automatic stay would remain in effect subject to Koyle making specific monthly payments pursuant to the terms of the Note and Deed of Trust, and curing his post-petition arrearage on the Note.

---

[4] Lundberg was formally substituted as trustee for Stewart Title on October 15, 2003.

Soon thereafter, however, Koyle failed to comply with the terms of the plan. Consequently, on December 20, 2004, the bankruptcy court dismissed Koyle's Chapter 13 petition without prejudice.

On February 17, 2005, Koyle filed a second Chapter 13 bankruptcy petition. Once again, that filing resulted in an automatic stay pursuant to 11 U.S.C. § 362. On July 18, 2005, the bankruptcy court signed an order and payment plan that was agreed to and signed by the parties (the 2005 Agreed Order). Similar to the order issued in Koyle's first bankruptcy proceedings, the 2005 Agreed Order stated that the automatic stay would remain in effect subject to Koyle making specific monthly payments pursuant to the terms of the Note and Deed of Trust.

Koyle failed to comply with the 2005 Agreed Order. In particular, Koyle failed to make a July 19, 2005 payment that was called for in the 2005 Agreed Order. Consequently, on October 7, 2005, the bankruptcy court dismissed Koyle's second Chapter 13 bankruptcy petition.

*Koyle's state court proceedings*

On February 3, 2005, Koyle filed a complaint (the 2005 Complaint) in Utah's Fourth District Court alleging numerous causes of action against Option One Mortgage and Wells Fargo, including violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 through 2617, as well as state law claims for breach of contract, fraudulent notice of default, and improper foreclosure proceedings. Koyle also, on that same date, recorded a *lis pendens* on the Property. The 2005 Complaint remained

4

pending in state court for nearly seven years, until January 12, 2012, when the parties entered into a stipulation to dismiss the matter with prejudice.

Prior to dismissing the 2005 Complaint, Koyle filed a second state court complaint on April 19, 2011 (the 2011 Complaint). Like the 2005 complaint, the 2011 Complaint alleged claims against Wells Fargo for violations of RESPA, breach of contract, and improper foreclosure practices. In addition, the 2011 Complaint alleged that the Notice of Default was fraudulent because Wells Fargo did not record its interest in the Note until after the Notice of Default was filed. As he did when he filed the 2005 Complaint, Koyle recorded a *lis pendens* on the Property on the same day that he filed his 2011 Complaint.[5]

Wells Fargo removed the 2011 Complaint to federal court and then moved to dismiss it for failure to state a claim upon which relief could be granted. The federal district court granted that motion and dismissed the complaint. Koyle appealed and this court affirmed in an unpublished order and judgment issued on July 16, 2012. Koyle v. Wells Fargo Bank Minn., 470 F. App'x 712 (10th Cir. 2012).

*Wells Fargo's cancellation of the Notice of Default*

On September 27, 2011, Scott Lundberg, as trustee, filed with the Utah County Recorder a Cancellation of Notice of Default (Cancellation) which stated, in pertinent part, that "the undersigned hereby cancels the Notice of Default filed for record October 16, 2003." Dist. Ct. Docket No. 34, Ex. 17 at 1.

---

[5] According to the record, Koyle has recorded six lis pendens on the Property and at no time has ever recorded any document canceling or vacating any of the *lis pendens*. Dist. Ct. Docket No. 15 at 15.

5

*Wells Fargo's steps to foreclose on the Property and Koyle's response*

On or about October 15, 2014, a Corrective Assignment of Deed of Trust was recorded with the Utah County Recorder. This corrected the December 12, 2003 Deed of Trust and clarified that the beneficiary of the Deed of Trust was Wells Fargo in its capacity as Trustee for Option One Mortgage Loan Trust 2003-4 Asset-Backed Certificates, Series 2003-4. Dist. Ct. Docket No. 15 at 5.

On December 19, 2014, Paul M. Halliday, Jr. (Halliday), who would soon thereafter be substituted as trustee for Scott Lundberg, filed with the Utah County Recorder a second "Notice of Default and Election to Sell" (Second Notice). Dist. Ct. Docket No. 15, Ex. 4 at 1. Like the first Notice, the Second Notice "declare[d] all sums secured" by the Note and Deed of Trust "immediately due and payable." Id. A trustee's sale was subsequently scheduled for April 20, 2015.

On January 5, 2015, Koyle responded by filing with the Utah County Recorder a Notice of Fraudulent Notice of Default.

*Substitution of trustee*

On January 23, 2015, a Substitution of Trustee (which was executed on January 20, 2015) was filed with the Utah County Recorder indicating that Halliday was appointed as successor trustee by Wells Fargo, in its capacity as trustee for Option One Mortgage Loan Trust 2003-4 Asset-Backed Certificates, Series 2003-4. Dist. Ct. Docket No. 2, Ex. 1 at 5. This Substitution of Trustee was filed more than a month after Halliday was officially substituted as trustee and filed the Second Notice with the Utah County

6

Recorder.

II

On March 18, 2015, Koyle filed suit against Sand Canyon and Wells Fargo in the

Fourth Judicial District Court of Utah County. Koyle's complaint stated at the outset that

it was Koyle's "understanding and belief that" defendants were barred by the applicable

Utah statute of limitations from "enforc[ing] the . . . Note." Dist. Ct. Docket No. 2, Ex. 1

at 2. The complaint in turn alleged six purported claims for relief:

1) *Fraudulent Assignment of Deed of Trust*.

The first cause of action alleged in the complaint was for fraudulent assignment of

the deed of trust. In support, Koyle alleged that at the time the Corrective Assignment of

Deed of Trust was filed with the Utah County Recorder on October 15, 2014, Sand

Canyon "had no beneficial interest in the" Deed of Trust and was thus "prohibited to

attempt to reassign any claimed interest in" the Deed of Trust. Id. at 6-7. Therefore,

Koyle alleged, the Corrective Assignment of Deed of Trust was "invalid and fraudulent in

nature." Id. at 7. And in turn, Koyle alleged, Sand Canyon was "not permitted by law to

instruct a trustee or successor trustee to commence foreclosure proceedings" against him.

Id.

2) *Fraudulent Notice of Default*.

The second cause of action alleged that because the Corrective Assignment of

Deed of Trust "was recorded by an entity," Sand Canyon, "that no longer had a legal

interest in and to the" Deed of Trust, "the Notice of Default recorded on December 19,

2014" was "also invalid, illegal and fraudulent in nature." Id. at 8.

3) *Improper Foreclosure Proceedings*.

The third cause of action alleged that because the Notice of Default was "invalid, illegal and fraudulent, the foreclosure procedure commenced by . . . Halliday . . . should immediately cease and the Court order a Cancellation of Notice of Default be issued and recorded by . . . Halliday." Id. at 9. The third cause of action also alleged that because the "Note was accelerated with the filing of a Notice of Default on October 16, 2003, . . . the statute of limitations ha[d] long since expired making enforcement of the . . . Note and the Defendant's ability to foreclose on the . . . [P]roperty well past the prescribed time allowed" under Utah law. Id. at 10.

4) *Demand for Proof of Claim*.

The fourth cause of action alleged that Utah law required defendants to "locate and prove the existence of and their right to enforce" the original Note. Id. at 11. The fourth cause of action further alleged that defendants "ha[d] previously admitted that they ha[d] no idea where the . . . Note [wa]s." Id. at 12. The "loss of possession" of the Note, the fourth cause of action alleged, "was the result of" Koyle's mortgage "be[ing] transferred at least six (6) times," and defendants were "therefore barred from enforcement of said instrument which includes proceeding with foreclosure against the . . . [P]roperty." Id.

5) *Statute of Limitations*.

The fifth purported cause of action, entitled "STATUTE OF LIMITATIONS," alleged that under Utah law, "a beneficiary of an 'instrument in writing' securing any

8

indebtedness may bring an action including foreclosure against the debtor within six (6) years," and "[a]fter that time, an action is barred." Id. at 12-13. The fifth cause of action in turn alleged that "[d]efendants ha[d] well exceeded the statute of limitations to enforce the obligation" and thus "the foreclosure proceedings [we]re both invalid and fraudulent having exceeded the statute of limitations." Id. at 13.

6) *Defendants' Cause of Action Against the Lender's Policy*.

The sixth purported cause of action alleged in the complaint was captioned "DEFENDANT'S [sic] HAVE A CAUSE OF ACTION AGAINST THE LENDER'S POLICY." Id. at 14. It alleged that "[a]n erroneous address was certified by Stewart Title Guaranty Company as the correct trust property address when in fact it was not." Id. at 14-15. It in turn alleged that "[t]he legal beneficiary of the Deed of Trust and Plaintiff therefore ha[d] a claim for damages against the Lender's Policy issued by the underwriter, Stewart Title Guaranty Company, on February 21, 2003." Id. at 15. "This information," the complaint alleged, "[wa]s being provided to the legal beneficiary for them to act upon in order to recover damages where they have exceeded their six (6) year statute of limitations" under Utah law. Id. at 16. Lastly, the complaint alleged that "[i]n the event the legal beneficiary fail[ed] to bring a claim for damages against Stewart Title Guaranty Company, Plaintiff w[ould] bring another action separate from this action in order to protect his interest in the trust property." Id.

On April 8, 2015, Wells Fargo removed the complaint to federal district court pursuant to 28 U.S.C. § 1441(b) "based on the diversity of citizenship of Parties." Dist.

9

Ct. Docket No. 2 at 3.  In particular, Wells Fargo's notice of removal indicated that Koyle was a Utah resident, Wells Fargo was a Delaware corporation with its principal place of business in South Dakota, and Sand Canyon was a California corporation with its principal place of business in California.  Id. at 4.

On May 8, 2015, defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, which was subsequently converted by the magistrate judge to a motion for summary judgment.[6]  Koyle responded with a memorandum in opposition and a cross motion for summary judgment.

On March 8, 2016, the magistrate judge issued a memorandum decision and order granting Wells Fargo's motion for summary judgment and denying Koyle's cross motion for summary judgment.  In doing so, the magistrate judge concluded that by agreeing to and signing the 2005 Agreed Order, "Koyle acknowledged the debt during his second Chapter 13 bankruptcy resulting in a renewal of the six year statute of limitations period" under Utah law.  Dist. Ct. Docket No. 52 at 7.  The magistrate judge further concluded that "Koyle's acknowledgment of the debt in conjunction with tolling under the bankruptcy court's automatic stay provision extended the statute of limitations period to six years after the bankruptcy was discharged to October 7, 2011."  Id. at 11.  In addition, the magistrate judge concluded that Wells Fargo's cancellation of the Notice of Default decelerated the debt and cancelled the Notice of Default.  More specifically, the

---

[6] The parties consented at the outset of the case to have the magistrate judge conduct all proceedings in the matter, including entry of final judgment.

10

magistrate judge concluded that "[t]he effect of the cancellation was that the acceleration was voided and the statute of limitations was tolled until the filing of a new Notice of Default." Id. at 15. Together, the magistrate judge held, these conclusions meant that "Koyle's acknowledgment of the debt and bankruptcy tolling provisions extended the statute of limitations period on the October 16, 2003, Notice of Default to October 7, 2011," and, "[a]s a result, the September 27, 2011 Cancellation was within the statute of limitations period and a new statute of limitations period began running upon issuance of the December 19, 2004, Notice of Default." Id. Finally, the magistrate judge concluded that even if the six-year statute of limitations period expired, "Wells Fargo could still foreclose on the deed of trust and Koyle [wa]s not entitled to any relief quieting title to the [P]roperty in his name." Id. The magistrate judge explained that "public policy" supported this conclusion, given the fact that "Koyle ha[d] frustrated the legal system and stymied foreclosure, despite his non-payment on the Note, through the pursuit of multiple court actions, bankruptcies, and other legal petitions." Id. at 16.

Koyle filed a timely notice of appeal.

III

In his appeal, Koyle challenges the magistrate judge's grant of summary judgment in favor of defendants. "We review summary judgment de novo and apply the same legal standard as the district court." Phila. Indem. Ins. Co. v. Lexington Ins. Co., 845 F.3d 1330, 1336 (10th Cir. 2017). Under Federal Rule of Civil Procedure 56(c), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

11

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Further, we "review legal questions de novo, including the district court's interpretation of" applicable state law. Phila. Indem. Ins. Co., 845 F.3d at 1336-37.

*Was the Trustee's sale barred by the statute of limitations?*

Koyle begins by asserting that summary judgment should not have been granted because Wells Fargo's proposed sale of the Property was barred by the applicable Utah statute of limitations. In support, Koyle makes two separate arguments, each of which we address below.

Koyle first asserts that Utah law required Wells Fargo to hold a trustee's sale of the Property within "six years from the date the debt [was] due under the Note was accelerated." Aplt. Br. at 6. He in turn asserts that "the 6-year statute of limitations for all debt due under the Note started to run on October 16, 2003, the date the Notice of Default accelerated all debt due under the Note." Id. at 7. He concedes, as the magistrate judge concluded, that the 2005 Agreed Order, which was filed in his second bankruptcy proceeding, "was a 'written acknowledgement [sic] of the debt,' . . . that," under Utah law, "reset the start date for the running of the 6-year statute of limitation[s]." Id. (citing UTAH CODE ANN. § 78B-2-113(1)(b) (West 2008)). But he argues that, contrary to the conclusion reached by the magistrate judge, "[t]he bankruptcy stay" that was in effect during his second Chapter 13 bankruptcy proceeding "was lifted when [he] failed to make the July 19, 2005 payment" that was called for in the 2005 Agreed Order. Id. at 10. In other words, he argues that "any 'tolling' of the 6-year statute of limitations by [his

12

second] Chapter 13 bankruptcy ended when the automatic stay was terminated as a result of [his] failure to make the July 19, 2005 payment." Id. And, he argues, "[i]t is more than 6-years between July 19, 2005 and September 27, 2011." Id. "Accordingly," he argues, "any trustee's sale to foreclose on the Trust Deed, or any other action to enforce the Note, is barred by the 6-year statute of limitations." Id.

Thus, the question posed by Koyle is whether the magistrate judge, in granting summary judgment in favor of Wells Fargo, correctly concluded that the statute of limitations was tolled during the entire period of Koyle's second Chapter 13 bankruptcy proceeding (i.e., until October 7, 2005) or whether, as now asserted by Koyle, his failure to make the scheduled July 19, 2005 payment on the Note effectively overrode the automatic stay associated with his second Chapter 13 bankruptcy proceeding and triggered the running of the statute of limitations.

We need not resolve this question, however, because Koyle failed to adequately raise it below. To be sure, in the "Statement of Facts" section of his cross motion for summary judgment, Koyle noted that the 2005 Agreed Order expressly provided that Koyle's failure to make timely payments would "'result in termination of the automatic stay without further notice or hearing.'"[7] Dist. Ct. Docket No. 33 at 3 (quoting Ex. F thereto). But nowhere did Koyle argue in that motion or any other pleading that his

_____

[7] Koyle also mentioned these facts in the supplemental brief he filed in opposition to defendants' motion for summary judgment and in support of his cross motion for summary judgment. Dist. Ct. Docket No. 43 at 8. Again, however, he argued that the statute of limitations began running at the conclusion of the 2005 bankruptcy proceeding on October 7, 2005. Id. at 9.

failure to make timely payments as anticipated by the 2005 Agreed Order resulted in the immediate and automatic termination of the automatic stay or, in turn, triggered the running of the statute of limitations. Instead, Koyle consistently argued in all of his district court pleadings that the statute of limitations began running again on October 7, 2005, the date that his second Chapter 13 bankruptcy proceeding was dismissed. Dist. Ct. Docket No. 32 at 12 (memorandum in opposition to defendants' motion to dismiss); Dist. Ct. Docket No. 33 at 12 (cross motion for summary judgment); Dist. Ct. Docket No. 43 at 6, 9 (supplemental brief in opposition to defendants' motion for summary judgment and in support of cross motion for summary judgment); Dist. Ct. Docket No. 44 at 6, 9 (corrected supplemental brief).

During the hearing on defendants' motion for summary judgment,[8] Koyle mentioned in passing that he never made the scheduled July 2005 payment and that, as a result thereof, "the automatic stay was gone and they had six years . . . to foreclose." Hearing Tr. at 15. Notably, Koyle made no mention of the fact that his argument derived from the language of the 2005 Agreed Order. Nor did Koyle file any type of supplemental pleading after the hearing discussing this new theory. Consequently, we conclude that the arguments made by Koyle during the summary judgment hearing were insufficient to adequately raise the issue and thereby preserve it for appellate review.

In sum, because defendants had no opportunity to respond in their pleadings to

---

[8] Koyle has filed an amended motion to supplement the record with a copy of the transcript of the hearing on defendants' motion for summary judgment. Out of an abundance of caution, we grant that motion.

Koyle's new argument, nor was it ever squarely presented to, let alone ruled on by, the district court, we conclude that Koyle has forfeited this argument. See Varnell v. Dora Consol. Sch. Dist., 756 F.3d 1208, 1215 (10th Cir. 2014); Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993) ("We have . . . repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory.").

Secondly, Koyle argues that "[e]ven if the [magistrate judge's] analysis was correct, by April 20, 2015, the date of the new trustee's sale set by Wells Fargo, at a minimum the 6-year statute of limitations would have run on all installment payments that came due more than 6-years before April 20, 2015 (i.e., all installment payments due before April 20, 2009)." Aplt. Br. at 11.

As with his first argument, Koyle never made this argument in his district court pleadings and, thus, we conclude it is forfeited. Moreover, we note that the argument is irrelevant because there is no indication in the record that Wells Fargo has previously attempted, or is currently attempting, to seek a judgment against Koyle for the unpaid payments on the Note. Rather, Wells Fargo is seeking to foreclose on the Property and the applicable Utah statute of limitations does not preclude it from doing so.[9] See UTAH CODE ANN. § 57-1-34 (West 2016) ("A person shall, within the period prescribed by law

---

[9] Because Koyle's claims in this case challenge only Wells Fargo's ability to foreclose on the Property, it is important to emphasize that we are not addressing Wells Fargo's ability to seek a personal judgment against Koyle for any unpaid balance on the Note. In other words, nothing in this decision is intended or should be interpreted as precluding Wells Fargo from seeking such relief.

for the commencement of an action on an obligation secured by a trust deed . . . commence an action to foreclose the trust deed."); UTAH CODE ANN. § 78B-2-309(2) (West 2008) ("An action may be brought within six years . . . upon any contract, obligation, or liability founded upon an instrument in writing.").

*Did cancellation of the Notice of Default violate Wells Fargo's contractual duties?*

Koyle next argues that "Wells Fargo violated its contractual duties to [him] by unilaterally recording its September 27, 2011 Cancellation of Notice of Default." Aplt. Br. at 11. "This," Koyle argues, "occurred eight years after the original Notice of Default was recorded on October 16, 2003, and over six years after [he] failed to make the July 19, 2005 payment." Id. at 11-12. "The Cancellation," he argues, "was filed without any payment by [him] to cure the default under the Note," and indeed "[n]o payment had been made by [him] since the Notice of Default had been recorded eight years earlier." Id. at 12. Koyle in turn argues that "[u]nder the Note and Trust Deed, Wells Fargo could not file the cancelation [sic] unless [he] paid the debt due under the Note." Id. In other words, he argues that "[t]he Note and Trust Deed do not permit Wells Fargo to decelerate the debt unless the debt has been paid in full." Id. at 14-15. "Therefore," Koyle argues, "Wells Fargo breached its contractual duty to Koyle under the Note and Trust deed by recording the Cancelation [sic]." Id. at 15.

We reject Koyle's arguments. To be sure, the Note and Deed of Trust carefully restricted the borrower's, i.e., Koyle's, right to reinstate after acceleration occurred; in particular, they required the borrower to cure the default. But nothing in either of those

16

documents expressly or implicitly precluded the lender, i.e., Wells Fargo, from cancelling the acceleration. Moreover, as Wells Fargo notes in its appellate response brief, Koyle makes no attempt to challenge the magistrate judge's ruling that Utah law does not bar Wells Fargo's cancellation of the 2003 Notice of Default. Aplee. Br. at 13.

Koyle also argues that "[e]ven if Wells Fargo could unilaterally file a Cancellation under the Note and Trust Deed, without the default being cured, the law requires that the Cancellation be filed 'within a reasonable time' after the Notice of Default was filed." Aplt. Br. at 16 (quoting Cooper v. Deseret Fed. Savings and Loan Assoc., 757 P.2d 483, 485 (Utah Ct. App. 1988)). And, Koyle argues, it was not reasonable for Wells Fargo in this case to "[w]ait[] eight years to cancel the Notice of Default." Id. at 17. "Therefore," he argues, "the Cancelation [sic] was unenforceable and did not stop the running of the statute of limitations." Id.

Because Koyle failed to present this argument to the district court, it is forfeited.[10] See Varnell, 756 F.3d at 1215.

*Foreclosing on the Deed of Trust after the statute of limitations has run*

In granting summary judgment in favor of defendants, the magistrate judge

---

[10] We note, in passing that the Utah cases cited by Koyle in support of the argument have nothing to do with the ability of a lender to cancel acceleration. Rather, they address the time in which a lender may accelerate after a default. And, in doing so, they rely on the "principle of good faith and fair dealing" in reaching their conclusions. Cottage Capital, LLC v. Red Ledges Land Dev., 345 P.3d 642, 648 (Utah 2015). Quite clearly, it would be ironic for Koyle, given his course of conduct aimed at avoiding his obligations under the Note, to prevail in this action based upon Wells Fargo's purported violation of this general equitable principle.

concluded, in an alternative holding, that "even if the statute of limitations to enforce the note ha[d] expired, Wells Fargo [wa]s still entitled to foreclose on the deed." App. at 58. In support of this conclusion, the magistrate judge distinguished between Well Fargo's ability to obtain a deficiency judgment against Koyle and its ability to foreclose on the Property. Id. at 57-58. The magistrate judge also concluded that "public policy support[ed]" that "conclusion in this case" because "Koyle ha[d] frustrated the legal system and stymied foreclosure, despite his non-payment on the Note, through the pursuit of multiple court actions, bankruptcies, and other legal petitions." Id. at 58.

Although Koyle challenges the alternative holding in his appeal, we need not address his arguments for the simple reason that he has failed to establish that the statute of limitations has run as to him personally.

IV

Both Koyle and defendants, citing language from the Note, request an award of fees. We reject Koyle's request but grant defendants' request.

*Koyle's request for fees*

Koyle argues that he "should be awarded his attorney's fees incurred in the district court proceedings below and on appeal." Aplt. Br. at 22. In support, Koyle asserts that "[u]nder the Note, [he] is liable to Wells Fargo for all costs and attorney's fees incurred by Wells Fargo in 'enforcing this Note.'" Id. at 21 (quoting App. at 11). He in turn asserts that "[u]nder Utah Code § 78B-5-826, since Wells Fargo may recover its attorney's fees from [him] for successfully enforcing the Note, [he] may also recover his

18

attorney's fees from Wells Fargo for successfully defending against enforcement of the Note."[11] Id. at 21-22.

Koyle's arguments fail, however, because he has not established that the magistrate judge erred in granting summary judgment in favor of defendants.

*Defendants' request for fees*

Defendants argue that, under the terms of the Note, they are entitled to an award of appellate attorneys' fees. Aplee. Br. at 30. Specifically, they cite to Paragraph 7(E) of the Note, which states:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

App. at 11.

We agree with defendants. The Second Notice that was filed by trustee Halliday on December 19, 2014, "declare[d] all sums secured" by the Note and Deed of Trust "immediately due and payable." Dist. Ct. Docket No. 15, Ex. 4 at 1. Halliday in turn effectively sought to enforce the Note by scheduling a trustee's sale of the Property. Koyle attempted to stop the foreclosure by initiating this action. By defending against

---

[11] The statute that Koyle cites provides as follows:
A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.
UTAH CODE ANN. § 78B-5-826 (West 2008).

19

this action, defendants have, in essence, incurred "costs and expenses in enforcing th[e] Note," and thus are entitled to an award of "reasonable attorneys' fees" as authorized by Paragraph 7(E) of the Note. We therefore direct defendants to submit, within thirty days of the date of this Order and Judgment, a statement of appellate attorneys' fees and costs for which they seek reimbursement. Koyle shall then have thirty days from the date defendants submit their statement to file any objections to defendants' requested fees and costs.

V

Koyle's amended motion to supplement the record is GRANTED. The judgment of the district court is AFFIRMED. Defendants shall file, within thirty days of the date of this Order and Judgment, a statement of appellate attorneys' fees and costs. Koyle shall have thirty days from the date defendants file their statement of appellate attorneys' fees and costs to file any written objections to defendants' requested fees and costs.

Entered for the Court

Mary Beck Briscoe
Circuit Judge