**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TORI VARNELL,

        Plaintiff - Appellant,

v.

DORA CONSOLIDATED SCHOOL
DISTRICT; SUPERINTENDENT
STEVEN BARRON; AMBER SHAW,

        Defendants - Appellees.

No.  13-2135

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:12-CV-00905-JCH-GBW)**

Shannon L. Kennedy, Kennedy Law Firm, Albuquerque, New Mexico, for Plaintiff -
Appellant.

Andrew M. Sanchez, Cuddy & McCarthy, LLP, Albuquerque, New Mexico, for
Defendants - Appellees Dora Consolidated School District and Steve Barron.

Desiree D. Gurule (Kevin M. Brown, Keya Koul, with her on the brief), Brown Law
Firm, Albuquerque, New Mexico, for Defendant – Appellee Amber Shaw.

Before **HARTZ**, **EBEL**, and **PHILLIPS**, Circuit Judges.

**HARTZ**, Circuit Judge.

Amber Shaw coached Plaintiff Tori Varnell in several sports while she was a student in the Dora Consolidated School District (Dora Schools). According to Plaintiff, Shaw sexually abused her for more than a year, ending while she was in the ninth grade, sometime in late 2006 or early 2007. On May 24, 2012, when Plaintiff was 20, she sued Ms. Shaw, Dora Schools, and Dora Schools Superintendent Steve Barron under the New Mexico Tort Claims Act, the Civil Rights Act of 1871, and Title IX of the Education Amendments of 1972. She later sought to amend her complaint to add an additional party and additional claims. On Defendants' motion the district court granted summary judgment on the federal claims as untimely, denied the proposed amendment to the complaint as futile, and dismissed the state tort claims without prejudice.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. We hold as follows: The applicable statute of limitations on the federal claims is New Mexico's general three-year statute for tort claims; New Mexico's special statute for child sexual abuse does not apply as a statute of limitations or tolling provision because it is not generally applicable. Although the limitations period was tolled by Plaintiff's minority, it was not further tolled by her alleged incompetence because she produced no evidence of incompetence. Plaintiff's contention on appeal that the period was tolled by fraudulent concealment from her mother was not preserved in the district court. And Plaintiff's federal claims accrued when she could file suit and obtain relief, which was no later than when the

2

abuse stopped, not when she allegedly learned the full extent of the resultant emotional injury. In addition, the district court properly dismissed Plaintiff's state-law claims without prejudice once it had dismissed with prejudice her federal claims. Finally, we affirm the district court's denial of Plaintiff's motion to amend because she presents no argument why her new federal claims would not be barred as untimely on the same grounds as her original claims, and it would be futile to proceed with state-law claims that would be dismissed upon rejection of the federal claims.

## I.    BACKGROUND

We summarize the record in the light most favorable to Plaintiff. *See SEC v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (in reviewing a grant of summary judgment, "a court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party" (brackets and internal quotation marks omitted)).

Ms. Shaw was coaching Plaintiff in volleyball, track, and basketball when she repeatedly sexually abused Plaintiff. The period during which the abuse occurred is unclear but apparently lasted from January 2005, when Plaintiff was in the seventh grade, until late 2006 or early 2007, when Plaintiff was a ninth grader. Plaintiff "hated every minute of the sexual encounters," Aplt. App., Vol. I at 12, and "wanted to kill herself as she did not see a way out," *id.* at 11. But she did not report the misconduct because Ms. Shaw instructed her not to tell anyone and she feared social repercussions. The abuse ended when Ms. Shaw resigned.

3

After graduating from high school in 2010, Plaintiff told a spiritual mentor about the alleged abuse. The mentor told her that Ms. Shaw's conduct was criminal and other girls could be abused if she did nothing. At this point Plaintiff "realized for the first time that [Ms. Shaw] could and probably would molest other girls and that what happened was not [her] fault and that [she] had a duty to try to protect others and to tell the people who loved [her] the truth about what had happened with [Ms.] Shaw." *Id.* at 78. She told her mother on July 12, 2010, that she had been sexually molested by Ms. Shaw. Her mother told Superintendent Barron and he reported the abuse to the local authorities. A state grand jury indicted Ms. Shaw for the abuse.

Plaintiff was examined by psychiatrist Gilbert Kliman on May 7, 2012. Dr. Kliman opined that up to the date of the evaluation Plaintiff did not realize that she was being "emotionally manipulated" and did not appreciate the "consequences to her of this two-year training epoch during her years of adolescent personality and sexual identity formation, or upon her anxiety level." *Id.* at 80. Further, Plaintiff did not comprehend how the abuse had "troubled and quietly damaged her," and she only began recognizing the harm done to her after speaking to her spiritual mentor in 2010. *Id.* at 81. Dr. Kliman also said that Plaintiff did not fully comprehend the emotional and physical damage she had suffered and would suffer because of the abuse.

About two weeks after the psychiatric examination, on May 24, 2012, Plaintiff sued Dora Schools, Mr. Barron, and Ms. Shaw in New Mexico state court. At the time, she was 20 years old and in college, pursuing a biology degree. The 16-page complaint

4

raised a claim under the New Mexico Tort Claims Act; civil-rights claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (for violations of substantive due process, equal protection, and the Fourth Amendment); and a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (prohibiting discrimination based on sex in federally funded educational programs). Defendants removed the case to the United States District Court for the District of New Mexico. Plaintiff later moved to amend her complaint to add additional claims and an additional defendant (the head coach at her school).

Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) on the ground that all claims were time barred. The district court adopted a magistrate judge's recommendation to convert Defendants' motion to dismiss into a motion for summary judgment. It granted summary judgment on the federal claims and declined to exercise supplemental jurisdiction over the remaining state claims, dismissing them without prejudice. Plaintiff did not object to the magistrate judge's recommendation to deny as futile her motion to amend the complaint, and the district court adopted the recommendation.

After the district court dismissed the action, Plaintiff moved under Fed. R. Civ. P. 60(a) to have the state claims remanded to the state court instead of dismissed. The motion was denied.

On appeal Plaintiff contends that (1) her federal-law claims are timely (a) because the limitations period was tolled by (i) N.M. Stat. Ann. § 37-1-30 (a child-sexual-abuse

statute), (ii) her mental incapacity, and (iii) fraudulent concealment, and (b) because her claims did not accrue until 2010 when she first understood the injury she had suffered; (2) the district court erred by refusing to remand her state-law claims to state court instead of dismissing them; and (3) the court erred in denying as futile her motion to amend the complaint.

## II.    TIMELINESS OF CLAIMS

The district court granted summary judgment to Defendants on Plaintiff's federal-law claims on the ground that they were untimely. "We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1077 (10th Cir. 2011) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and a fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). "We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the [nonmoving] party." *Merrifield*, 654 F.3d at 1077 (internal quotation marks omitted).

The text of § 1983 does not contain a statute of limitations. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been

6

to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985). The Supreme Court assumed that "Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers, and litigants, rather than a source of uncertainty, and unproductive and ever-increasing litigation." *Id.* at 275. Otherwise, "the legislative purpose to create an effective remedy for the enforcement of federal civil rights [would be] obstructed by uncertainty in the applicable statute of limitations, for scarce resources [would] be dissipated by useless litigation on collateral matters." *Id.* Although national uniformity was not required, there should be "uniformity within each State." *Id.* In particular, the limitations period should not "depend upon the particular facts or the precise legal theory of [the] claim." *Id.* at 274. As for which state statute should be adopted, the Court held that the one that best fit § 1983 claims as a whole would be the one for personal-injury actions. *See id.* at 280. And, as the Court held a few years later, if "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989).

The law was settled in *Wilson* that for § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims. *See* 471 U.S. at 280; N.M. Stat. Ann. § 37-1-8 (West 2014). We think that Plaintiff is expressing a vain hope when she argues that "the Supreme Court

7

would modify its holding in [*Owens*] to allow an exception for victims of child abuse." Aplt. Br. at 28–29.

Not only the length of the limitations period, but also "closely related questions of tolling and application," are determined by state law in § 1983 actions. *Wilson*, 471 U.S. at 269. The same reasoning that governed the selection of the applicable statute of limitations should also apply to the selection of tolling statutes. Thus, the state tolling provisions adopted for actions under § 1983 should not depend on the "particular facts or the precise legal theory of the claim." *Id.* at 274. Only generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983. *See Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). As the Ninth Circuit has explained:

> It would no less frustrate the federal interest in uniformity and the interest in having firmly defined, easily applied rules were we to obediently apply the residual statute of limitations, only to then adopt a tort-specific tolling provision. Such a holding would succeed only in transferring the confusion over the choice among multiple statutes of limitations to a choice among multiple tolling provisions.

*Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (brackets, citation, and internal quotation marks omitted) (declining to apply state child-abuse statute to determine timeliness of § 1983 claim).

Although the parties have ignored the point, we must also address the proper limitations period for Plaintiff's claim under Title IX. We agree with the magistrate judge that we should apply the same state statutes that apply to § 1983 claims. That

8

appears to be the uniform rule of the other circuits. *See Stanley v. Trustees*, 433 F.3d 1129, 1134 (9th Cir. 2006) ("For other civil rights actions, we have borrowed the state statute of limitations for personal injury. Should we apply the same ruling for Title IX claims? It appears that every circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury. The rationale of our sister circuits is compelling, and we adopt it." (citations and internal quotation marks omitted)); *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007); *Cetin v. Purdue Univ.*, 94 F.3d 647 (7th Cir. 1996) (unpublished table decision). This result is consistent with this circuit's view of the limitations period under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *See Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993).

### A.  New Mexico Child-Sexual-Abuse Statute

We now turn to Plaintiff's contention that the timeliness of her federal claims must be determined under New Mexico Statute Annotated § 37-1-30(A) (West 2014). Section 37-1-30(A) provides:

> An action for damages based on personal injury caused by childhood sexual abuse shall be commenced by a person before the latest of the following dates:
> (1) the first instant of the person's twenty-fourth birthday; or
> (2) three years from the date of the time that a person knew or had reason to know of the childhood sexual abuse and that the childhood sexual abuse resulted in an injury to the person, as established by competent medical or psychological testimony.

9

It should be obvious from our above discussion that the statute is irrelevant to § 1983 cases because it does not apply to torts in general. We have already held that a state statute of limitations restricted to child-abuse cases does not apply to § 1983. *See Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993). And even if we could do as Plaintiff requests and construe § 37-1-30 as a tolling provision, it still fails the same general-applicability requirement. Insofar as *Cosgrove v. Kansas Department of Social Rehabilitation Services*, 162 F. App'x 823, 827–28 (10th Cir. 2006), says otherwise, we reject it. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential . . . .").

### B.     Minority and Incapacity

Plaintiff has better luck, at least at the outset, invoking New Mexico's general statute allowing tolling of the limitations period because of minority and incapacity. The statute states:

> The times limited for the bringing of actions by the preceding provisions of this chapter [including the three-year period for torts] shall, in favor of minors and incapacitated persons, be extended so that they shall have one year from and after the termination of such incapacity within which to commence said action.

N.M. Stat. Ann. § 37-1-10 (West 2014). As noted above, § 1983 incorporates such state general tolling provisions. *See Wilson*, 471 U.S. at 269; *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).

There is no doubt that Plaintiff qualifies for minority tolling, which would have given her to age 19 to bring her action. But on May 24, 2012, when she filed this action, Plaintiff was 20 years old.

10

To extend the time further, Plaintiff alleges that she was incapacitated. New Mexico courts have explained that a person is incapacitated when she "is unable to manage [her] business affairs or estate, or to comprehend [her] legal rights or liabilities." *Lent v. Emp't Sec. Comm'n*, 658 P.2d 1134, 1137 (N.M. Ct. App. 1982) (internal quotation marks omitted). Under New Mexico law, "exceptions to statutes of limitation must be construed strictly," *Slade v. Slade*, 468 P.2d 627, 628 (N.M. 1970), and the plaintiff invoking a tolling provision bears the burden of persuasion, *see Stringer v. Dudoich*, 583 P.2d 462, 463 (N.M. 1978). Plaintiff has not met that burden.

Although Plaintiff's opening brief asserts that she was incapacitated, she offers no evidence that she could not manage her affairs or comprehend her legal rights and liabilities. On the contrary, she had graduated from high school and was pursuing a biology degree in college. Moreover, no later than July 2010 (almost two years before this suit was filed), when, on the advice of her mentor, she told her mother of the abuse, she was certainly able to discuss the abuse with others and she was aware that Ms. Shaw's conduct was criminal, that other girls could be harmed if she did not come forward, that what happened was not her fault, and that she had a duty to tell others what had happened. Any decent person would sympathize with the emotional trauma suffered by a victim of such abuse, and such trauma can certainly impact one's ability to deal with various issues; but a rational trier of fact could not find that Plaintiff had shown that she was unable to manage her business affairs or comprehend her legal rights during the year before suit was filed. *See Eber v. Harris Cnty. Hosp. Dist.*, 130 F. Supp. 2d 847, 871

11

(S.D. Tex. 2001) ("The unsound mind exception serves to protect people who are unable to participate in, control, or understand the progression and disposition of a lawsuit."); *Nolde v. Frankie*, 964 P.2d 477, 483 (Ariz. 1998) (sexual-abuse victims did not show that they were unable to understand their legal rights and liabilities when they did not allege that they were ever in denial that the abuse occurred or had repressed memories of the abuse but, rather, admitted that they were always aware that the defendant had sexually abused them).

### C. Fraudulent Concealment

Under New Mexico law the limitations period is tolled if the party asserting concealment shows "(1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993). This is a general tolling provision and is therefore applicable here.

Plaintiff contends that Superintendent Barron had been alerted to the abuse by Plaintiff's teammates but concealed Ms. Shaw's conduct by failing to report the abuse, permitting Ms. Shaw to resign, and dissuading Plaintiff's mother (with whom he was allegedly having an affair) from reporting the abuse. On appeal, she argues that concealment from her mother, who could have sued on her behalf when she was a minor, justifies equitable tolling. But she cites no authority for such a tolling theory and we fail

12

to see how such alleged concealment could have delayed her suit once she reached majority. In any event, she forfeited the argument by not raising it below. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) ("We have . . . repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory.").

### D. Claim Accrual

Finally, Plaintiff argues that her complaint was filed within the three-year limitations period because her claim did not accrue until she had discovered the extent of the injury inflicted on her by the abuse. She contends that "as a teenager and young adult, [she] could not appreciate the damage done to her, nor has she fully discovered the nuances of her chronic psychiatric injury." Aplt. Br. at 20. According to Plaintiff, "[N]ot until after [she] underwent counseling to address manifestations of her injury, was she able to connect Coach Shaw's sexual abuse to its lasting impacts on her life." *Id.* at 20–21. Thus, she argues, the district court erred because she "provided sufficient facts to establish that a reasonable juror could find that until she was twenty years old, [she] reasonably failed to discover she is suffering chronic psychiatric injuries as a result of having been sexually molested by her female coach." *Id.* at 49.

Although some New Mexico court decisions may support Plaintiff's argument, the time of accrual of a § 1983 claim is a matter of federal law "*not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The same is true of a claim under Title IX. *See Baker*, 991 F.2d at 632 ("Federal law controls questions relating to accrual

13

of federal causes of action.")  The relevant federal law on accrual is set forth in *Wallace*, which concerned the time of accrual of a § 1983 claim of false arrest contrary to the Fourth Amendment.  *See id.* at 387.  Federal law governing accrual of causes of action, said the Supreme Court, "conform[s] in general to common-law tort principles."  *Id.* at 388.  And "[u]nder those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief."  *Id.* (brackets, citations, and internal quotation marks omitted).  The Court recognized, however, that the common law provides distinctive treatment to the tort of false arrest, delaying accrual until the false imprisonment ends (a rule "dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned"), and it adopted that accrual date for the claim before it.  *Id.* at 389 (citing, among other authorities, Restatement (Second) of Torts § 899 cmt. c (1977)).

Following *Wallace*, we determine the accrual date of Plaintiff's claim by looking to the accrual date for the common-law tort most analogous to her § 1983 claim.  That tort is battery, which "occurs when an individual acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results."  *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208–09 (10th Cir. 2006) (ellipsis and internal quotation marks omitted); *see* Restatement

14

(Second) of Torts § 18(1) (1965).[1] As for the accrual of a battery claim, the Restatement § 899 comment c states as a general rule for torts, "[T]he statute [of limitations] does not usually begin to run until the tort is complete, and may not begin to run even then if there has been a series of continuous acts"; and, in the same paragraph cited by *Wallace* as support for the accrual rule for false imprisonment, the comment adds that "[a] battery is complete upon physical contact, even though there is no observable damage at the point of contact." By this standard, Plaintiff's claim accrued no later than the last sexual abuse by Ms. Shaw, sometime in late 2006 or early 2007.

Plaintiff argues that her claims accrued much later because she did not realize the extent of her psychological injury until shortly before filing suit. She relies on what is known as the "discovery rule," which delays accrual of a claim until the plaintiff knew or should have known the facts necessary to establish her cause of action, such as the fact that a surgeon left a sponge in the plaintiff's abdomen after an operation. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). But even if the discovery rule applies to her § 1983 claim, Plaintiff knew long before she filed suit all the facts

---

[1] The Restatement defines the tort as follows:

> (1) An actor is subject to liability to another for battery if
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
> (b) an offensive contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 18(1).

necessary to sue and recover damages. Although she may not have known how harmful Ms. Shaw's abuse was, "[t]he cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (internal quotation marks omitted). "Were it otherwise," explained the Supreme Court, "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

Moreover, Plaintiff has admitted that she knew from the outset that Ms. Shaw had abused her and caused nontrivial, indeed significant, injury. Plaintiff's complaint alleges:

> 14. Eventually, Amber Shaw manipulated Plaintiff into performing cunnilingus on her although Plaintiff would try to get out of having to perform cunnilingus on her coach by feigning sickness.
> 15. Amber Shaw told Plaintiff not to tell anyone so she would not get in trouble.
> . . . .
> 17. Plaintiff was too afraid to disclose to anyone that she was being sexually abused by her female coach.
> 18. Plaintiff was afraid to report the sexual abuse because she feared being bullied by her peers at a [sic] school for engaging in homosexual sexual acts with her female coach.
> 19. Plaintiff wanted to kill herself as she did not see a way out.
> 20. Plaintiff was afraid to disclose that she was being sexually abused by her female basketball coach as she feared homophobic retaliation by teachers and other coaches and she needed good school and community referrals for college.
> . . . .
> 24. Plaintiff hated every minute of the sexual encounters with her coach Amber Shaw.
> 25. Plaintiff did not want to disappoint her coach and feared reporting her coach.

Aplt. App., Vol. I at 11–12. Thus, Plaintiff's § 1983 claim accrued no later than early 2007.

16

The same is true of her Title IX claim. Plaintiff has not suggested any reason why her Title IX claim accrued at a different time from her § 1983 claim, and we see none. As noted above, the general rule is that accrual occurs "when the plaintiff can file suit and obtain relief," *Wallace*, 549 U.S. at 388 (internal quotation marks omitted); and we know of no reason why Plaintiff could not have brought a Title IX claim as soon as she brought one under § 1983.

Because Plaintiff did not file suit until 2012, her federal claims are untimely and were properly dismissed.

## III.  MOTION TO REMAND STATE CLAIMS TO STATE COURT

Plaintiff argues that the district court erred when it denied her motion to remand her state claims back to the state court instead of dismissing them without prejudice. She complains that if she refiles her state-law claims in state court, they will now be barred by statutes of limitations. She is wrong. The problem she anticipates has been alleviated by 28 U.S.C. § 1367(d).

Here, the district court had federal-question jurisdiction under 28 U.S.C. § 1331 over the § 1983 and Title IX claims. The court could then exercise supplemental jurisdiction under § 1367(a) over Plaintiff's state-law claims because they "form part of the same case or controversy." 28 U.S.C. § 1367(a). Once the federal-law claims were dismissed, however, the court properly acted under § 1367(c) in declining further supplemental jurisdiction over the state-law claims. *See id.* § 1367(c) (court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367](a) if . . . the

district court has dismissed all claims over which it has original jurisdiction"). In that event, § 1367(d) provides: "The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Thus, Plaintiff has at least 30 days after dismissal of the state-law claims to bring suit in state court (assuming that the claim was originally timely filed). State courts have apparently agreed that tolling under § 1367(d) continues until any federal appeal is complete. *See, e.g.*, *Turner v. Kight*, 957 A.2d 984, 993–97 (Md. 2008); *Okoro v. City of Oakland*, 142 Cal. App. 4th 306, 312–13 (Cal. Ct. App. 2006); *Huang v. Ziko*, 511 S.E.2d 305, 308 (N.C. Ct. App. 1999). We are confident that the New Mexico courts would follow suit. The district court did not abuse its discretion by dismissing the state-law claims.

## IV.    MOTION TO AMEND

Plaintiff argues that the district court erred when it denied her motion to amend the complaint on the ground that adding the new claims would be futile. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (a district court may deny a motion to amend a complaint if the amendment would be futile and "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal" (internal quotation marks omitted)). Her opening brief on appeal, however, presents no argument why her new federal claims would not be time barred even if the federal claims in her original complaint were so barred. Plaintiff does make such an argument in her reply brief. But arguments for reversal must be presented in the opening brief to be preserved. *See*

18

*Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). And it would be futile to proceed with any new state-law claims if they would be dismissed (without prejudice) anyway once the federal claims were dismissed.

## V.    CONCLUSION

We AFFIRM the district court's grant of summary judgment, the district court's dismissal without prejudice of the state-law claims, and the district court's denial of Plaintiff's motion to amend her complaint. We also DENY Plaintiff's request that we award costs and attorney fees.