21-2995-cv; 22-298-cv
*Kane v. Mount Pleasant Cent. Sch. Dist., Coe v. Eastport Union Free Sch. Dist.*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2022

(Argued in Tandem:  March 8, 2023    Decided:  August 17, 2023)

_____

MR. CHRISTOPHER KANE,

*Plaintiff-Appellant,*

— v. —                               21-2995-cv

MOUNT PLEASANT CENTRAL SCHOOL DISTRICT, SUSAN GUINEY, FRANK VITERITTI,
BRUCE FERGUSON, NICOLE SCHIMPF, RICHARD HENNESSY,

*Defendants-Appellees,*

PHILIP CICCONE,

*Defendant.*

_____

JANE COE, a pseudonym,

*Plaintiff-Appellant,*

— v. —                               22-298-cv

EASTPORT UNION FREE SCHOOL DISTRICT, SOUTH MANOR UNION FREE SCHOOL
DISTRICT, EASTPORT-SOUTH MANOR CENTRAL HIGH SCHOOL DISTRICT, EASTPORT-

SOUTH MANOR CENTRAL SCHOOL DISTRICT, as successor in interest, JOSEPH P. GAGLIANO, PETER C. SCORDO, EDWARD BRODERICK, GARY H. SCHNEIDER, BENEDICT MERENDINO, B. ALLEN MANNELLA, WILLIAM BURGER, BRUCE KRONMAN, CHARLES TESTA, RICHARD SCHMIDT, MARILYN DORSA, MARION DIENER, NEIL MIRANDA, and all the superintendents, administrators, principals and their employees and/or agents, from 1997 through 2002,

*Defendants-Appellees*,

CHARLES REGAN,
*Defendant.*

_____

Before:            CABRANES, BIANCO, *Circuit Judges*∗


These two appeals, heard in tandem and consolidated for disposition, raise the same legal question with respect to New York's Child Victims Act, N.Y. C.P.L.R. § 214-g, which revives the time to commence civil actions based upon certain sexual offenses that were committed against children less than eighteen years of age. In particular, we must determine whether Section 214-g can revive or toll a federal claim under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, that is otherwise time barred, but is based upon alleged sexual abuse that falls within the contours of Section 214-g. We conclude that it cannot. Under well-settled law, claims under Section 1983 and Title IX are governed by New York's general statute of limitations for personal injury actions under N.Y. C.P.L.R. § 214(5), which is three years. We hold that Section 214-g has no impact on the limitations period for such federal claims. Therefore, the district courts correctly dismissed the federal claims as time barred under Section 214(5), and Kane's leave to amend his operative complaint was properly denied.

---

∗ Judge Rosemary S. Pooler, originally a member of the panel, died on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458–59 (2d Cir. 1998).

Accordingly, we **AFFIRM** the judgments of the district courts.

KEVIN T. MULHEARN, P.C., Orangeburg, NY *for Plaintiff-Appellant Christopher Kane*.

JOSEPH GALLO, McGivney Kluger Clark & Intoccia, P.C., New York, NY (Gary Intoccia, *on the brief*), *for Defendants-Appellees Mount Pleasant Central School District, Susan Guiney, Frank Viteritti, Bruce Ferguson, Nicole Schimpf, and Richard Hennessy*.

John Ray, John Ray & Associates, Miller Place, NY *for Plaintiff-Appellant Jane Coe*.

JOSHUA S. SHTEIERMAN, Volz & Vigliotta, PLLC, Nesconset, NY, *for Defendants-Appellees Eastport Union Free School District, South Manor Union Free School District, Eastport-South Manor Central High School District, and Eastport-South Manor Central School District as successor in interest, Joseph P. Gagliano, Peter C. Scordo, Edward Broderick, Gary H. Schneider, Benedict Merendino, B. Allen Mannella, William Burger, Bruce Kronman, Charles Testa, Richard Schmidt, Marilyn Dorsa, Marion Diener, Neil Miranda, and all the superintendents, administrators, principals, and their employees and/or agents, from 1997 through 2002*.

3

JOSEPH F. BIANCO, *Circuit Judge*:

These appeals in two different cases, heard in tandem and consolidated for disposition, challenge two separate judgments dismissing their respective federal claims. Plaintiff-appellant Christopher Kane appeals from a judgment, entered in the United States District Court for the Southern District of New York (Seibel, *J.*), dismissing as time barred his claims under Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, and denying his motion for leave to file a Second Amended Complaint as futile. Plaintiff-appellant Jane Coe appeals from a judgment, entered in the United States District Court for the Eastern District of New York (Vitaliano, *J.*), dismissing her claims under 42 U.S.C. § 1983 and Title IX as time barred.

These two appeals raise the same legal question with respect to New York's Child Victims Act, N.Y. C.P.L.R. § 214-g, which revives the time to commence civil actions based upon certain sexual offenses that were committed against children less than eighteen years of age. In particular, we must determine whether Section 214-g can revive or toll a federal claim under 42 U.S.C. § 1983 and Title IX that is otherwise time barred, but is based upon alleged sexual abuse that falls within the contours of Section 214-g. We conclude that it cannot. Under well-settled law,

4

claims under Section 1983 and Title IX are governed by New York's general statute of limitations for personal injury actions under N.Y. C.P.L.R. § 214(5), which is three years. We hold that Section 214-g has no impact on the limitations period for such federal claims. Therefore, the district courts correctly dismissed the federal claims as time barred under Section 214(5), and Kane's leave to amend his operative complaint was properly denied.

Accordingly, we **AFFIRM** the judgments of the district courts.

## BACKGROUND[1]

### I.    *Kane*, 21-2995

Christopher Kane brought this action against the Mount Pleasant Central School District ("MPCSD"), several former school district employees, and one of his alleged abusers, based on bullying and physical and sexual assaults that occurred in 2008 and 2009 when he was a high school freshman at Westlake High School, a school operated by defendant MPCSD. According to the First Amended Complaint (the "FAC"), in August 2008, Kane attended football practices with the varsity football team as an incoming freshman. At the time, Kane was thirteen

---

[1] The factual allegations are taken from the operative complaints in each case, which we must accept as true in reviewing a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

years old, but was required to practice and share the locker room with students who were seventeen and eighteen years old. The older teammates bullied Kane, "mocked him for his then not-yet-fully-developed sexual organs, questioned his sexual preference, and taunted him, and threatened" to continue the harsh treatment "for the rest of the 2008 football season." Joint App'x at 41–42. Kane also was allegedly physically bullied and sexually assaulted by some of his teammates.

According to the FAC, Kane's football coaches witnessed some of these incidents but failed to intervene. In late August 2008, Kane told his parents about the harassment, without providing specifics. His parents spoke with the head football coach, who assured Kane's parents "he would take care of it." Joint App'x at 44 (internal quotation marks omitted). The head coach warned the team that he would not tolerate hazing and threatened to throw off the team any player credibly accused of hazing, but he made no changes to prevent or mitigate hazing, took no action to discipline any individuals, and never attempted to identify the parties involved.

On January 9, 2009, Kane informed his mother about the specific incidents of physical and sexual assault involving his teammates. That same evening,

Kane's mother reported the allegations to the Westlake Principal. And, the following day, she reported the sexual assault to the local police. On January 12, 2009, Kane's parents met with the Principal and the MPCSD Superintendent to discuss the incidents.

Ultimately, the Principal and Superintendent directed MPCSD's Title IX Compliance Officer and Westlake's Assistant Principal to investigate Kane's allegations. According to the FAC, however, the investigation was a "sham," and the school's goals were to shield the accused older students from real punishment and to protect the school's reputation. Joint App'x at 53. On or about January 21, 2009, the school suspended Kane for five days because of a threat Kane allegedly made to the teammate who was physically assaulting him.

On January 23, 2009, an attorney hired by Kane's parents faxed the school a letter demanding that the school revoke Kane's suspension and threatening legal action against MPCSD and various employees if they did not take corrective measures. Kane's parents ultimately entered a stipulation of settlement with the MPCSD, and MPCSD reinstated Kane.

Kane filed the initial Complaint on September 25, 2020. On February 3, 2021, Kane filed his FAC alleging, *inter alia*, that MPCSD and other high-ranking

administrators: (1) had actual knowledge but were deliberately indifferent to the sexual misconduct and harassment inflicted upon him by his teammates; and (2) retaliated against him in violation of Title IX, as well as various New York state common law claims against the individual defendants.

On March 17, 2021, MPCSD filed a motion to dismiss the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the applicable statute of limitations had expired on his Title IX claim. Kane opposed the motion and sought leave to amend the FAC. The proposed Second Amended Complaint added two full paragraphs where Kane more specifically pled the element of "sexual gratification" in connection with the alleged sexual abuse as required by Article 130 of the New York Penal Law and deleted certain paragraphs in connection with his now withdrawn arguments related to delayed accrual and/or equitable estoppel in connection with his Title IX retaliation claim against MPCSD.

The district court dismissed, with prejudice, Kane's Title IX claims on timeliness grounds, opining that the applicable statute of limitations had passed. *Kane v. Mount Pleasant Cent. Sch. Dist.*, 20-cv-7936, 2021 WL 5112981 (S.D.N.Y. Nov. 3, 2021). It rejected Kane's argument that Section 214-g tolled his Title IX claims because it held that Section 214-g was not a generally applicable tolling provision,

declined to exercise supplemental jurisdiction over Kane's state law claims, and denied his cross-motion for leave to amend because it would be futile given that his claims were time barred. *Id.* at *8.

## II.    *Coe,* 22-298

Jane Coe brought this action against the Eastport-South Manor Central School District ("Eastport"),[2] the Eastport girls' basketball coach, along with various other employees, agents and officials acting on behalf of Eastport, alleging that they are liable for the coach's alleged sexual abuse and harassment of Coe while she was a minor student at Eastport.

According to the Complaint, Coe attended middle school at Eastport from September 1997 through June 1999 and then attended the high school from September 1999 through June 2002. Coe was a member of the girls' basketball team. The Complaint alleges that, in 2001, the coach enticed Coe to accompany him to a New York Knicks basketball game at Madison Square Garden. At the game, the coach purchased alcoholic beverages, and persuaded Coe to drink them,

---

[2] Also named as defendants in this action are Eastport Union Free School District, South Manor Union Free School District, and Eastport-South Manor Central High School District. These districts merged to become Eastport in 2004.

causing her to become intoxicated. After the game, the coach drove Coe to his home and manipulated her into performing oral sex on him.

Eastport initiated an investigation, but, at the coach's urging, Coe and the coach lied to school authorities about what transpired during and after the game. Eastport did not conduct any further investigation. Coe alleges that the coach engaged in sexual intercourse with her on at least three discrete occasions.

Coe sued Eastport and the coach seventeen years later. Coe argues that Eastport is liable for the coach's alleged sexual abuse and harassment of her while she was a minor student pursuant to Title IX, Section 1983, and various state laws.

Eastport filed a motion to dismiss the Complaint under Rule 12(b)(6). Eastport argued that Coe's claims were time barred. The district court agreed and granted Eastport's motion to dismiss the federal claims as time barred. *Coe v. Regan*, 19-cv-05327, 2022 WL 467053 (E.D.N.Y. Feb. 3, 2022). The district court rejected Coe's argument that Section 214-g revived her federal claims. *Id.* at *3–*5. The district court declined to exercise supplemental jurisdiction over the state law claims and dismissed those claims without prejudice. *Id.* at *6.

**DISCUSSION**

The district courts in Kane's and Coe's respective cases dismissed their federal claims as time barred. We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6), including legal conclusions concerning the court's "interpretation and application of a statute of limitations." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, "we accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 370 (2d Cir. 2022) (per curiam) (internal quotations and citations omitted).

In Kane's case, the district court also denied him leave to amend his complaint because it held that it would be futile given that the federal claims were time barred. We review *de novo* the denial of leave to amend where the district court determined that the proposed amendments would be futile. *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783

11

F.3d 383, 389 (2d Cir. 2015); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Royal Bank of Scotland Grp.*, 783 F.3d at 389 (internal quotation marks omitted). To evaluate whether a proposed amended complaint would state a claim, we rely on "the same standards as those governing the adequacy of a filed pleading." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

## I.  New York's General Statute of Limitations for Personal Injury Actions Applies to Section 1983 and Title IX Claims

Neither Section 1983 nor Title IX contains a statute of limitations, and thus courts must borrow a state statute of limitations. *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam). Courts "must apply the most appropriate or analogous statute of limitations," so long as it is not inconsistent with federal law or policy. *Id.* (internal quotation marks and citation omitted); *accord Bd. of Regents v. Tomanio*, 446 U.S. 478, 488 (1989). Previously, courts attempted to determine which state statute of limitations was most appropriate or most analogous to the various types of federal claims before them. However, this led to "uncertainty, confusion, and lack of uniformity." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (citing *Wilson v. Garcia*, 471 U.S. 261, 272 n.25 (1985) and *Owens v. Okure*, 488

12

U.S. 235, 240 (1989)).

In *Wilson*, the Supreme Court recognized that "[a]lmost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." 471 U.S. at 272–73. The Supreme Court concluded that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation" required a single statute of limitations for Section 1983 claims. *Id.* at 275. More specifically, the Court explained:

> If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute.

*Id.* at 273–75. The Court concluded that Section 1983 claims are best described as personal injury claims, and thus, the corresponding state statute of limitations for those claims was the one to be applied to all Section 1983 claims. *Id.* at 280.

In *Owens*, the Supreme Court addressed the question of which state statute of limitations is applicable when a state has more than one personal injury statute of limitations. The appellant in *Owens* argued that the Court must apply the

13

statute of limitations for personal injury that was specific to intentional torts while appellee argued that the state's general or residual personal injury statute of limitations was applicable. 488 U.S. 242–43. The Court in *Owens* wanted "a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 states." *Id.* at 243. The Court held that where state law provides multiple statutes of limitations for personal injury actions, courts should borrow the general or residual statute for personal injury actions because applying the statute of limitations to the limited category of intentional torts would be inconsistent with Section 1983's broad scope. *Id.* at 249–50. Therefore, in New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years. *See Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) (citing *Owens*, 488 U.S. at 250–51).

The *Wilson* and *Owens* analysis applies with equal force to actions under Title IX. *See Curto*, 392 F.3d at 504 (noting that its conclusion that Title IX claims borrow the statute of limitations for personal injury actions "accords with our own practice of borrowing the state statute of limitations for personal injury actions for analogous federal discrimination actions brought pursuant to . . . [Section] 1983").

**II.    The Child Victims Act Does Not Revive or Toll Section 1983 or Title IX Claims**

Kane and Coe do not dispute that New York's general statute of limitations for personal injury actions applies to their claims.  Instead, they argue that Section 214-g, which was enacted as part of the Child Victims Act, also applies to the facts of their respective cases.  Section 214-g "revive[s] the time to commence civil actions based upon certain conduct which would constitute a sexual offense committed against children less than 18 years of age." *Fenton v. State*, 213 A.D.3d 737, 739 (2d Dep't 2023) (internal quotation marks and citations omitted).  It states that:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts . . . which would constitute a sexual offense . . . committed against a child less than eighteen years of age . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y. C.P.L.R. § 214-g.  Kane and Coe contend that their federal claims were revived and tolled under Section 214-g, and therefore, are timely.

Based on the Supreme Court's reasoning in *Wilson* and *Owens*, every United States Court of Appeals to address this issue thus far has determined that a specialized statute for sexual abuse claims does not render an otherwise untimely

Section 1983 or Title IX claim timely. *See Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212–13 (10th Cir. 2014) (holding that New Mexico's special statute for child sexual abuse did not toll plaintiff's Section 1983 and Title IX claims because it is not generally applicable); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (holding that Oregon's specialized abuse statute was not closely related to two-year residual statute of limitations, as required to borrow tolling provision from state law for plaintiff's Section 1983 claim); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759–61 (5th Cir. 2015) (holding that the general statute of limitations applied to plaintiff's Title IX and Section 1983 claims rather than Texas's specific limitations period for sexual assault claims); *Woods v. Ill. Dep't of Child. and Fam. Servs.*, 710 F.3d 762, 765–68 (7th Cir. 2013) (declining to apply Illinois' child sexual abuse statute to revive plaintiff's Section 1983 claim).

Kane and Coe argue, nevertheless, that Section 214-g revived their federal claims and tolled the general statute of limitations. To be sure, federal courts are obligated to apply a state's revival and tolling provisions. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975); *see also Tomanio*, 446 U.S. at 484 ("In § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are

binding rules of law."); *Hardin v. Straub*, 490 U.S. 536, 540–44 (1989) (holding that a Section 1983 claim was tolled by state's provision tolling the onset of limitations periods for prisoners and others suffering from legal disabilities).  However, the revival or tolling provision must be "closely related" to the borrowed statute of limitation.  *See Wilson*, 471 U.S. at 269 ("Only the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." (internal footnote omitted)).  A revival or tolling provision is closely related when it applies to *all claims* contained within a general statute of limitations for personal injury actions, such that there is no need to analyze the nature of the underlying claims.  Therefore, "generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983" and Title IX.  *Varnell*, 756 F.3d at 1213.  Those types of tolling provisions, which are unrelated to any particular legal theory underlying the individual claims, do not frustrate *Wilson*'s desire to avoid time consuming litigation and uncertainty caused by "an analysis of the particular facts" for each claim to determine the applicable statute of limitations.  471 U.S. at 272.

However, application of tort-specific revival or tolling provisions, such as

Section 214-g, would require federal courts to engage in the type of analysis *Wilson* forbids. It would strain credulity that the Supreme Court would require federal courts to abstain from a factual analysis for purposes of determining the appropriate statute of limitations, only to allow courts to engage in that same analysis to determine if a revival or tolling provision applies. "Such a holding would succeed only in transferring the confusion over the choice among multiple statutes of limitations to a choice among multiple tolling provisions." *Bonneau*, 666 F.3d at 580 (alterations adopted) (internal quotation marks and citation omitted); *see also Varnell*, 756 F.3d at 1213 ("The same reasoning that governed the selection of the applicable statute of limitations should also apply to the selection of tolling statutes. Thus, the state tolling provisions adopted for actions under § 1983 should not depend on the particular facts or the precise legal theory of the claim." (internal quotation marks and citations omitted)).

Our holding is consistent with the reasoning of numerous district court decisions in the Second Circuit that have considered whether Section 214-g affects the timeliness of Section 1983 and Title IX claims. *See, e.g.*, *FL v. Hilton Cent. Sch. Dist.*, No. 21-cv-06551, 2022 WL 1665160, at *3 (W.D.N.Y. May 25, 2022) (holding that Section 214-g does not apply to Section 1983 claims); *Boyle v. North Salem Cent.*

18

*Sch. Dist.*, No. 19-cv-8577, 2020 WL 2319116, at \*3 (S.D.N.Y. May 11, 2020) ("Although Section 214-g extends the statute of limitations for state law claims respecting child sexual abuse, it does not extend the statute of limitations for Section 1983 claims. This is because where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." (internal quotation marks and citation omitted)); *accord Caldwell v. City of New York*, 21-cv-6560, 2021 WL 3887678, at \*1 (S.D.N.Y. Aug. 27, 2021); *Doe v. NYS Off. Of Child. & Fam. Servs.*, 21-cv-4332, 2023 WL 2574741, at \*6–7 (N.D.N.Y. Jul. 7, 2021).

Kane and Coe argue that these federal cases incorrectly rely on *Wilson* and *Owens*, which they contend are not relevant because a court is not compelled to make a binary choice between competing statutes of limitations. We disagree. Although *Wilson* and *Owens* focus on choices between different statutes of limitations, the overarching purpose of both decisions is to create uniformity within the context of these federal claims because the types of claims brought under them can be quite broad. That uniformity would be frustrated if federal courts were required to conduct a factual inquiry to determine whether a state tort-specific tolling provision applies to a party's federal claims.

19

Indeed, New York state courts interpreting these same statute of limitations provisions have reached the same conclusion we do in dismissing Section 1983 and Title IX claims brought in state court as time barred. In *BL Doe 3 v. Female Acad. of the Sacred Heart*, 199 A.D. 3d 1419 (4th Dep't 2021), the plaintiff, like Kane and Coe, did not dispute that New York's three-year statute of limitations for non-specified personal injury claims applied to the claims brought under Section 1983 and Title IX. *Id.* at 1421. Just like here, the *BL Doe 3* plaintiff argued that Section 214-g tolled her federal claims. The Fourth Department rejected this argument because it held that Section 214-g was "not a revival statute *related* to the residual personal injury statute of limitations." *Id.* The court distinguished Section 214-g from tolling provisions based on a plaintiff's infancy or incarceration because determining whether Section 214-g applies to toll plaintiff's claims here would require it to consider the particular facts of the case. *Id.* at 1422.

More recently, in *Dolgas v. Wales*, 215 A.D.3d 51 (3d Dep't 2023), the Third Department agreed with the decision in *BL Doe 3* and held that Section 214-g does not revive claims under Section 1983 or Title IX that are otherwise barred by the three-year statute of limitations contained in Section 214(5). *Id.* at 57–59. In doing so, the court specifically rejected the contention plaintiffs assert here, namely, that

it should not be a binary choice between competing limitations periods and that

Section 214-g is a revival or tolling statute that is "related to" Section 214(5):

> Plaintiffs also contend that CPLR 214–g and CPLR 214(5) are related because "CPLR 214–g was placed within a subdivision of the same CPLR section governing residual personal injury actions." Even accepting plaintiffs' characterization of these two separate statutes, however, they are at most similar in that they both set forth a limitations period within which to commence an action. Other than this, there is no relationship between the two statutes. Because plaintiffs' arguments as to whether CPLR 214–g revived the 42 USC § 1983 claim are unavailing, [the lower court] correctly dismissed such claim as barred by the statute of limitations. For similar reasons, plaintiffs' claim under Title IX was also correctly dismissed as time-barred.

*Id.* at 58 (alteration adopted) (internal footnote omitted).

In sum, we hold that Section 214-g, as a tort-specific provision, is not a revival or tolling statute closely related to the residual personal injury statute of limitations applicable to a Section 1983 or Title IX claim. Accordingly, the district courts correctly concluded that the federal claims brought by Kane and Coe, which had accrued more than three years prior to the filing of their respective lawsuits, were time barred under Section 214(5) and properly dismissed those claims.[3]

---

[3] We emphasize that our holding does not impact a plaintiff's ability to utilize Section 214-g to attempt to revive his or her *state law claims* that are governed by the revival statute but would otherwise be time barred under the applicable New York statute of limitations. In particular, in Kane's case, the district court declined to exercise

### III. Kane's Proposed Amendment to His Claim Would Be Futile

Kane cross-moved for leave to amend his complaint if the district court concluded that he had not sufficiently pled that defendant Ciccone's sexual assault was done for his own sexual gratification. Such an amendment would not cure the fact that Kane's claims are time barred. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."). Thus, the district court did not err in declining to give Kane leave to amend his claim.

### CONCLUSION

For the foregoing reasons, the judgments of the district courts are **AFFIRMED**.

---

supplemental jurisdiction over his state law claims against all defendants under the New York Human Rights Law, as well as claims against all defendants for intentional infliction of emotional distress and against the MPCSD for "negligent security and supervision" and "breach of duty of care," and dismissed those claims without prejudice. Joint App'x at 17. The district court in Coe's case likewise declined supplemental jurisdiction and dismissed without prejudice her state law claims for negligent failure to investigate and supervise, sexual abuse and harassment, sexual assault, sexual battery, intentional infliction of emotion distress, prima facie tort, breach of fiduciary duties, and negligent hiring and retention. Therefore, both Kane and Coe may re-file these claims in state court.